PRICE OKAMOTO HIMENO & LUM

WARREN PRICE III          1212
ROBERT A. MARKS          2163
707 Richards Street, Suite 728
Honolulu, Hawaii  96813
Phone: 808.538.1113
Fax: 808.533.0549
E-mail:  wprice@pohlhawaii.com
          ram@pohlhawaii.com


Attorneys for Defendants
KIAHUNA GOLF CLUB, LLC,
KG KAUAI DEVELOPMENT, LLC,
PUKALANI GOLF CLUB, LLC,
KG MAUI DEVELOPMENT, LLC,
MILILANI GOLF CLUB, LLC,
QK HOTEL, LLC, OR HOTEL, LLC,
AND KG HOLDINGS, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>QK HOTEL, LLC, a Hawaii limited liability company, et al.,<br><br>    Defendants,<br><br>  and<br><br>FRANKLIN K. MUKAI,<br><br>    Third-Party Plaintiff,<br><br>  vs.<br><br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al., | CV 04-00124 ACK-BMK<br><br>CONSOLIDATED CASES<br><br>NOTICE OF MOTION; KG DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN CV NO. 04-00128 ACK-BMK; MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN CV NO. 04-00128 ACK-BMK; CERTIFICATE OF SERVICE<br><br>DATE:   February 13, 2006<br>TIME:   9:30 am<br>JUDGE:  Hon. Alan C. Kay |

Third-Party Defendants.

| | |
|---|---|
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, | CV 04-00125 ACK-BMK |

        Plaintiff,

    vs.

PUKALANI GOLF CLUB, LLC, a Hawaii limited liability company, et al.,

        Defendants,

    and

FRANKLIN K. MUKAI,

        Third-Party Plaintiff,

    vs.

SPORTS SHINKO CO., LTD., a Japan Corporation, et al.,

        Third-Party Defendants

| | |
|---|---|
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, | CV 04-00126 ACK-BMK |

        Plaintiff,

    vs.

KIAHUNA GOLF CLUB, LLC, a Hawaii limited liability company, et al.,

        Defendants,

    and

FRANKLIN K. MUKAI,

        Third-Party Plaintiff,

    vs.

SPORTS SHINKO CO., LTD., a Delaware Corporation, et al.,

        Third-Party Defendants.

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation, | CV 04-00127 ACK-BMK |
|         Plaintiff, | |
|    vs. | |
| OR HOTEL, LLC, a Hawaii limited liability company, et al., | |
|         Defendants, | |
|    and | |
| FRANKLIN K. MUKAI, | |
|         Third-Party Plaintiff, | |
|    vs. | |
| SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al., | |
|         Third-Party Defendants. | |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, | CV 04-00128 ACK-BMK |
|         Plaintiff, | |
|    vs. | |
| MILILANI GOLF CLUB, LLC, a Hawaii limited liability company; et al., | |
|         Defendants, | |
|    and | |
| FRANKLIN K. MUKAI, | |
|         Third-Party Plaintiff, | |
|    vs. | |
| SPORTS SHINKO CO., LTD., a Japan Corporation, et al., | |
|         Third-Party Defendants. | |

## NOTICE OF MOTION

TO:    PAUL ALSTON, ESQ.            WILLIAM BORDNER, ESQ.
       GLENN T. MELCHINGER, ESQ.    JOHN REYES-BURKE, ESQ.
       Alston Hunt Floyd & Ing       Burke McPheeters Bordner & Estes
       American Savings Bank Tower   Pacific Guardian Center
       1001 Bishop Street, 18th Floor  Mauka Tower
       Honolulu, Hawaii 96813        737 Bishop Street, Suite 3100
                                     Honolulu Hawaii 96813
       Attorneys for Plaintiffs
       SPORTS SHINKO CO., LTD.       Attorneys for Defendant
       AND SPORTS SHINKO (USA)       FRANKLIN K. MUKAI
       CO., LTD.

NOTICE IS HEREBY GIVEN THAT Defendants KG Holdings, LLC and

Mililani Golf Club, LLC's Motion for Summary Judgment in D. Hawaii CV NO.

04-00128 ACK-BMK shall come on for hearing before the Honorable Alan C.

Kay, United States District Judge, in his courtroom in the United States

Courthouse, 300 Ala Moana Boulevard, Honolulu, Hawaii on February 13, 2006 at

9:30 am, or as soon thereafter as counsel may be heard.

DATED:  Honolulu, Hawaii, January 13, 2006.


                        /s/ Robert A. Marks
                        WARREN PRICE III
                        ROBERT A. MARKS

                        Attorneys for Defendants
                        KIAHUNA GOLF CLUB, LLC,
                        KG KAUAI DEVELOPMENT, LLC,
                        PUKALANI GOLF CLUB, LLC,
                        KG MAUI DEVELOPMENT, LLC,
                        MILILANI GOLF CLUB, LLC,
                        QK HOTEL, LLC, OR HOTEL, LLC,
                        AND KG HOLDINGS, LLC

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br><br>       Plaintiff,<br><br>   vs.<br><br>QK HOTEL, LLC, a Hawaii limited liability company, et al.,<br><br>       Defendants,<br><br>   and<br><br>FRANKLIN K. MUKAI,<br><br>        Third-Party Plaintiff,<br><br>   vs.<br><br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al.<br><br>AND CONSOLIDATED CASES | CV 04-00124 ACK-BMK<br>CV 04-00125 ACK-BMK<br>CV 04-00126 ACK-BMK<br>CV 04-00127 ACK-BMK<br>CV 04-00128 ACK-BMK<br><br>CONSOLIDATED CASES<br><br>KG DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN CV NO. 04-00128 ACK-BMK |

KG DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
IN CV NO. 04-00128 ACK-BMK

DEFENDANTS KG Holdings, LLC and Mililani Golf Club, LLC, through their attorneys, Price Okamoto Himeno & Lum, hereby move for summary judgment as to all claims filed against them by plaintiff Sports Shinko (USA) Co., Ltd. in D. Hawaii CV No. 04-00128 ACK-BMK.

This motion is based upon Rule 56 of the Federal Rules of Civil Procedure, and LR 56.1 of the Rules of the United States District Court for the District of Hawaii, and is supported by the attached memorandum of law, the Concise Statement of Facts and declarations and exhibits attached thereto filed

contemporaneously, such further exhibits and authorities as may be included in the

reply memorandum to be filed, the arguments of counsel, and the record herein.

     DATED:  Honolulu, Hawaii, January 13, 2006.


               /s/ Robert A. Marks          
               WARREN PRICE III
               ROBERT A. MARKS

               Attorneys for Defendants
               KIAHUNA GOLF CLUB, LLC,
               KG KAUAI DEVELOPMENT, LLC,
               PUKALANI GOLF CLUB, LLC,
               KG MAUI DEVELOPMENT, LLC,
               MILILANI GOLF CLUB, LLC,
               QK HOTEL, LLC, OR HOTEL, LLC,
               AND KG HOLDINGS, LLC

## TABLE OF CONTENTS

I.      Introduction......................................................................................   1

II.     The Sports Shinko Organization....................................................   6

III.    Toshio Controlled The 'Creditor' And 'Debtor' .........................   9

IV.     Plaintiff Alleges Toshio Exercised His Control To 'Cause' The
        'Fraudulent Transfer' ................................................................... 12

V.      Toshio Sells The "Mililani Properties" To KG ........................... 15

VI.     The Claims Against KG Fail As A Matter Of Law...................... 16

        A.      The Act Only Applies To Arm's Length Transactions.................... 17

        B.      This Was Not An Arm's Length Transaction By The Terms
                Of The Act – Toshio Is An 'Insider" Of Both Creditor And
                Debtor ............................................................................... 20

        C.      Plaintiff's Failure To Sue Its 'Sister Company' Confirms
                There Was No Arm's Length Transaction ......................... 21

        D.      Plaintiff Is The Wrong Party To Bring A Claim Against KG
                Under The Act ................................................................... 21

VII.    What Really Happened – Toshio Found A Buyer That Would Take
        *ALL* Of The Hawaii Assets – *Good And Bad* – In A Bulk Sale ................. 23

        A.      Plaintiffs Attempted To Plead Around The Fact That There
                Was A Bulk Sale To KG .................................................... 23

        B.      The Bulk Sale Included Another "Hawaii Property" – A
                Sewage Treatment Plant In Maui ...................................... 25

VIII.   Conclusion ................................................................................... 26

## TABLE OF AUTHORITIES

**STATUTES**

Haw. Rev. Stat. § 1-15(3) ................................................................ 19

Haw. Rev. Stat. Ch. 651C, Hawaii Uniform Fraudulent Transfer Act,
("The Act")................................................................................... 2,
16-23,
26-27

Haw. Rev. Stat. § 651C-1 ............................................................. 20

Haw. Rev. Stat. § 651C-4 ............................................................. 4, 18

Haw. Rev. Stat. § 651C-5 ............................................................. 4, 18

Haw. Rev. Stat. § 651C-8 ............................................................. 18

13 Eliz. I, ch. 5 (1570) ................................................................. 26


**CASES**

Credit Associates of Maui, Ltd. v. Brooks, 90 Hawaii 371, 373, 978 P.2d 809,
811 (1999) ................................................................................. 19

Dines v. Pacific Ins. Co., Ltd., 78 Hawaii 325, 337, 893 P.2d 176, 188
(1995) ....................................................................................... 19

Iddings v. Mee-Lee, 82 Hawaii 1, 15, 919 P.2d 263, 277 (1996) ........................ 19

Kim v. Contractors License Bd., 88 Hawaii 264, 270, 965 P.2d 806, 812
(1998) ....................................................................................... 19

Morgan v. Planning Dept., County of Kauai, 104 Hawaii 173, 185, 86 P.3d
982, 994 (2004) ........................................................................... 19

Nihi Lewa, Inc. v. Dept. of Budget & Fiscal Svcs., 103 Hawaii 163, 168, 80
P.3d 984, 989 (2003)..................................................................... 19

Robert's Hawaii School Bus, Inc. v. Laupahoehoe Trans. Co., Inc., 91 Hawaii
224, 241-243, 982 P.2d 853, 871-873 (1999)....................................... 22

United States v. Noble, 1999 U.S. Dist. LEXIS 9821 (W.D. Mich. 1999),
aff'd, 248 F.3d 1153 (6th Cir. 2001)................................................. 4

OTHER AUTHORITIES

7A Unif. L. Annot. Uniform Fraudulent Transfer Act (1984 Act), Prefatory
Comment (1999 ed.) .............................................................................. 26

http://www.senrei.com/art3.html                                                            3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br><br>     Plaintiff,<br><br>  vs.<br><br>QK HOTEL, LLC, a Hawaii limited liability company, et al.,<br><br>     Defendants,<br><br>  and<br><br>FRANKLIN K. MUKAI,<br><br>     Third-Party Plaintiff,<br><br>  vs.<br><br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al.<br><br>AND CONSOLIDATED CASES | CV 04-00124 ACK-BMK<br>CV 04-00125 ACK-BMK<br>CV 04-00126 ACK-BMK<br>CV 04-00127 ACK-BMK<br>CV 04-00128 ACK-BMK<br><br>CONSOLIDATED CASES<br><br>MEMORANDUM IN SUPPORT OF KG DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN CV NO. 04-00128 ACK-BMK |

**MEMORANDUM IN SUPPORT OF
KG DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN
CV NO. 04-00128 ACK-BMK**

## I.   INTRODUCTION

In this case, a CREDITOR claims it was the victim of a 'fraudulent transfer' of property from an insolvent DEBTOR to the KG Defendants.[1]  At first blush, this

---

[1]   In CV No. 04-00128 ACK-BMK, the "KG Defendants" are Mililani Golf Club, LLC and KG Holdings, LLC.

Defendant Mililani Golf Club, LLC is the transferee of the "Mililani properties" in controversy in CV No. 04-00128 ACK-BMK.  See Second Amended Complaint in D. Hawaii CV No. 04-00128 ("Cplt") ¶¶ 2, 9 attached to the Concise

1

appears to be a straightforward case under The Uniform Fraudulent Transfer Act (the "Act").[2]  Until, that is, it is understood that the CREDITOR and DEBTOR were under common ownership and control at the time of the 'fraudulent transfer'.

      The alleged CREDITOR in this case is the plaintiff, *Sport Shinko* (USA) Co. Ltd. ("SS-USA").  The alleged DEBTOR, who is not a party, is *Sports Shinko* (Mililani) Co. Ltd. ("SS-MILILANI").[3]  It is admitted that both companies were subsidiaries controlled by the same parent company, *Sports Shinko* Co. Ltd., a Japan Corporation ("SS-JAPAN").  Cplt ¶ 12.  It is undisputed that Toshio Kinoshita ("TOSHIO") was the controlling shareholder, President and Representative Director of SS-JAPAN at the time of the alleged 'fraudulent transfer.' [4]

Statement of Facts as Exhibit A; declaration of Wayne Tanigawa ("Tanigawa decl.") at ¶ 3.

      The KG defendants – indeed, all the defendants in the consolidated lawsuits except Franklin K. Mukai – are limited liability companies owned and controlled by local developer Bert A. Kobayashi, his family and Mr. Tanigawa.  Id at ¶ 2.

[2]     Hawaii Revised Statutes ("HRS") Ch. 651C.

[3]     Cplt ¶¶ 1, 7.

[4]     See Exhibit B (excerpts of SS-Japan's Draft of Reorganization Plan on file with the Osaka District Court) at Bates 256 1013 (identifying TOSHIO as the owner of 105,000 shares of SS-Japan, out of total 180,000 shares issued). TOSHIO was also the representative director and president of SS-Japan, id. and Exhibit F at 6 (Admission 1).  See also Exhibit C at Bates 111 3355, a "confidential" document identifying yet another high office TOSHIO held at of SS-Japan. See declaration of Robert A. Marks attached to CSOF at ¶ 8 regarding exhibits marked "confidential".

As demonstrated below, by virtue of his control over SS-JAPAN, TOSHIO also controlled SS-JAPAN'S subsidiaries, including both the alleged CREDITOR -- the erstwhile 'victim' -- and DEBTOR -- the alleged fraudulent transferor.[5]  And because of his common control it is clear that the claims herein fail as a matter of law since it is axiomatic that a person – or a corporation – cannot defraud himself.

Given this is obvious, it is telling that **the CREDITOR elected not to sue the DEBTOR** — a necessary party.[6]  Indeed, it is the DEBTOR – the fraudulent

---

The power of representative directors under Japan law is significant:

Each entity must appoint at least one (1) representative director (*daihyo torishimariyaku*), who is selected by a majority of the board of directors from among its members. Each representative director is authorized by law to perform all acts on behalf of the corporation and bind it with respect to third parties without further corporate authorization. . . .

See http://www.senrei.com/art3.html.

[5]    TOSHIO owned the majority of the stock of SS-Japan.  Exhibit B at Bates 256 1013.  The only other shareholders of SS-Japan, Kinoshita Kensetsu K.K., aka Kinoshita Construction Co., Ltd. and Misaki Country, aka Misaki Country Club, aka Misaki C.C. Co., Ltd., were also effectively controlled by TOSHIO.  See Exhibits D and E, respectively.  Plaintiffs marked exhibits D and E "confidential", so their contents cannot be elaborated upon in this filing.  See declaration of Robert A. Marks at ¶8.

Through his control of SS-Japan, TOSHIO also controlled SS-USA.  Eighty-nine percent of the stock of SS-USA was owned by SS-Japan.  Exhibit F (excerpts of a discovery response from SS-USA and SS-Japan at 13 (Admissions 25 and 26).  Other companies, all indirect subsidiaries of SS-Japan and/or companies controlled by TOSHIO, owned the remaining 11% of the stock of SS-USA.   Exhibit F at 30 (Answer to Interrogatory 15.)

[6]    The debtor is an appropriate defendant in every 'fraudulent transfer' case where the alleged debt has not been reduced to judgment, as is the case here.  The

transfer**or** – that is the 'perpetrator' of an alleged fraudulent transfer.[7]

The reason Plaintiff pled the case this way is apparent.  Correctly pled, this case would have been fashioned ***Sport Shinko (USA) v. Sport Shinko (Mililani) and KG*** and would have directed a glaring spotlight on the fact that the loan transaction at the core of the claim was an alleged intra-company debt and not an arm's length transaction.

In an attempt to distract from this reality, Plaintiff pled the case as if its commonly owned and controlled sister company – the debtor – did not exist, and only sued the KG Defendants and attorney Mukai.[8]  This does nothing to change the fact that the debtor-creditor relationship at the core of this case was not arm's length.

This is further confirmed by Plaintiff's claim that Mukai, together with other alleged 'insiders' (specifically, TOSHIO, Toshio's family, and Toshio's operatives, all of whom were officers or directors of DEBTOR) entered into a

---

debtor must be a defendant because only the debtor can determine whether defenses to the debt exist and muster the facts necessary to prove those defenses. See, e.g., United States v. Noble, 1999 U.S. Dist. LEXIS 9821 (W.D. Mich. 1999), aff'd, 248 F.3d 1153 (6th Cir. 2001) ("in the majority of jurisdictions, the debtor-grantor who has retained no interest in the transferred property is considered a necessary party-defendant to a fraudulent conveyance claim only if the underlying debt has not been reduced to judgment", citing cases and authorities.)

[7]     "A transfer made . . . by a debtor is fraudulent . . ." HRS §§ 651C-4(a), -5.

[8]     Defendant Franklin K. Mukai "at all relevant times . . . was an employee and/or partner of McCorriston Miller Mukai MacKinnon, LLP[.]"  Cplt ¶ 4.

conspiracy to 'cause' the fraudulent transfer.  Cplt ¶¶ 8, 44.

As demonstrated below, aside from the fact that this 'conspiracy' claim is not cognizable, the very act of pleading it confirms there is no question of fact in this case about TOSHIO's control of the CREDITOR and DEBTOR herein – despite what the Plaintiff will argue as a reason to deny or defer this Motion. Indeed, the 'conspiracy' as alleged by Plaintiff, Cplt ¶¶ 12-41, could only have occurred if TOSHIO, in fact, totally controlled SS-JAPAN and all of its subsidiaries, and that they were essentially his totally-controlled 'alter egos'.  This 'conspiracy' allegation not only removes Plaintiff's anticipated argument that there is a question of fact about TOSHIO's joint control, but also underscores why in this case, a party is claiming to be the victim of its own fraud.

Plaintiff also cannot disguise this undeniable reality by filing separate – and essentially identical – lawsuits.[9]  As the Court will note, this case is one of five (5) consolidated cases that Plaintiff (or its parent, SS-Japan) has filed claiming the exact same 'conspiracy' to 'cause' the alleged 'fraudulent transfer' of property.  As the plaintiffs explained to the Court, the five cases

---

[9]    The filing of five lawsuits instead of one appears to be driven by the plaintiff's desire to obscure the fact that there was a bulk transfer of all the assets of all of the SS companies operating in Hawaii to the KG Defendants.  This bulk transfer was provided for in a single purchase and sale agreement that set a single price for all of the SS assets in Hawaii.  The assets included, in addition to the golf courses and hotels that are the subject of the five lawsuits, a *sewage treatment plant* on Maui which plaintiff has not sued to recover.  See infra at VII, pp. 23-25.

". . . involve transfers of property by various Hawaii Sports Shinko subsidiaries [called "Debtors" in the complaints], owned directly or indirectly by the Plaintiffs. The [Debtors] were each in debt to Plaintiff [SS-USA] or [SS-Japan]. Each of the [Debtors] was insolvent. Each of the [Debtors] transferred substantially all of its property to certain affiliates of KG Holdings, LLC . . ."

Exhibit G (Excerpts from Plaintiffs' Ex Parte Motion to Assign Similar Cases to Single Judge) at 4.

The Second Amended Complaints in the consolidated cases (D. Hawaii CV 04-0124 ACK-BMK, 04-0125 ACK-BMK, 04-0126 ACK-BMK and 04-0127 ACK-BMK) are attached as Exhibits H-1, H-2, H-3 and H-4, respectively. As the Court will note, the only difference in the cases is that the transferred property was from a different TOSHIO-controlled Hawaii subsidiary of Sports Shinko. The fact that TOSHIO controlled all of these other Hawaii subsidiaries, however, further confirms his common control of the CREDITOR and DEBTOR in this case and why plaintiff's claims fail as a matter of law.

## II.    THE SPORT SHINKO ORGANIZATION

SS-JAPAN owns numerous golf courses and resort properties in Japan and in the late 1980's and 1990's established a number of overseas subsidiaries. Cplt ¶12. In the United States, it created SS-USA.

For the Sport Shinko business in Hawaii, Sports Shinko (Hawaii) Co., Ltd. ("SS-HAWAII") was created. Cplt ¶¶ 1, 24. For projects undertaken in Hawaii,

subsidiaries of SS-Hawaii were created, and each subsidiary held title to project-related properties.[10]

For the purposes of this Motion, TOSHIO's control of the entire Sport Shinko organization cannot be disputed.[11]  Indeed, it is graphically illustrated by

---

[10]      Sports Shinko (Waikiki) Corporation ("SS-WAIKIKI") was the owner of two Waikiki hotels transferred to KG entities.  SS-WAIKIKI is the alleged DEBTOR and fraudulent transferor in CV No. 04-00124 ACK-BMK and CV No. 04-00127 ACK-BMK, but is not a party.  See Exhibits H-1 and H-4 at ¶¶ 1, 9.

Sports Shinko (Pukalani) Co., Ltd ("SS-PUKALANI") was the owner of a golf course and development property on Maui transferred to KG entities.  SS-PUKALANI is the alleged DEBTOR and fraudulent transferor in CV No. 04-00125 ACK-BMK, but is not a party.  See Exhibit H-2 ¶¶ 1, 9.

Sports Shinko (Kauai) Co., Ltd. ("SS-KAUAI") was the owner of a golf course and development lands transferred to KG entities.  SS-KAUAI is the alleged DEBTOR and fraudulent transferor in CV No. 04-00128 ACK-BMK, but is not a party.  See Exhibit H-3 at ¶ 1, 16.

SS-MILILANI, the unnamed party and alleged DEBTOR and fraudulent transferor in this case, was the former owner of "the Mililani Properties", which consist of an Oahu golf course transferred to KG entities.  Cplt ¶¶ 1, 9, 41, 44.

As acknowledged in the Second Amended Complaints, SS-HAWAII owned 100% of the stock of SS-MILILANI, SS-PUKALANI and SS-KAUAI.  Exhibits A, H-2 and H-3 at ¶ 1.  SS-HAWAII owned 100% of the stock of Sports Shinko Resort Hotel Corporation, which in turn, owned 100% of the stock of SS-WAIKIKI.  See Exhibits H-1 and H-4 at ¶ 1.  TOSHIO was also president and director of each.  See exhibits I, J, L, M, and P.

[11]      SS-Japan was (and is) a Japan corporation.  Cplt ¶ 12.  At the time of the property transfers, the majority of the stock of SS-Japan was owned by TOSHIO, who held virtually every high office at SS-JAPAN.  Exhibits B at Bates 256 1013 and C at 7.  SS-JAPAN owned and controlled SS-USA.  Cplt ¶ 12; Exhibit N (excerpts of First Amended Complaint) at 2, ¶ 1.  TOSHIO was a Director and the President of SS-USA.  Exhibit O.  SS-USA owned and controlled SS-HAWAII.  Cplt ¶ 1.  TOSHIO was a Director and the President of SS-HAWAII.  Exhibit P.  SS-HAWAII owned and controlled SS-MILILANI.  Cplt ¶ 1.  TOSHIO was a

the following document, which TOSHIO signed for SS-USA (the creditor), SS-JAPAN (the creditor's parent), SS-HAWAII (the debtor's parent), **_and_** SS-MILILANI, the debtor:



See exhibit R for complete document.

It is also cannot be disputed that on January 28, 2002, SS-Japan went into

---

Director and the President of SS-MILILANI.  Exhibit I.  SS-MILILANI owned the "Mililani Properties", the allegedly 'fraudulently transferred' property in this case. Cplt ¶¶ 9, 41, 44; Decl. of Tanigawa at ¶ 3.  See also Exhibit F at 6 - 8 (admissions 1-7).

bankruptcy in Japan (Cplt ¶ 46) and was purchased out of bankruptcy by Goldman Sachs in 2004.[12]

## III.   TOSHIO CONTROLLED THE 'CREDITOR' AND 'DEBTOR'

As noted, it is admitted that SS-JAPAN was the "ultimate parent" of both the CREDITOR and DEBTOR in this case.  Cplt ¶ 12.  There is also no dispute that the CREDITOR (SS-USA) was a subsidiary of SS-JAPAN, and the DEBTOR (SS-MILILANI) was a *subsidiary of a subsidiary of a subsidiary* of SS-JAPAN. Cplt ¶¶ 1, 12.

Moreover, it cannot be disputed that TOSHIO, in addition to having ownership control over SS-JAPAN and all its subsidiaries, had operational control as well.  In this regard, in addition to being a Representative Director, President, and holding other high office at SS-JAPAN, TOSHIO was a Director and President of all the relevant subsidiaries – no matter where they were in the corporate structure.[13]  TOSHIO's ownership and operational control of the Sports Shinko companies is as follows:

---

[12]    Notwithstanding that the ownership of the stock of SS-Japan has changed, at the time of the alleged 'fraudulent' transfer, there were no 'innocent shareholders' of the CREDITOR, as they were all, like the DEBTOR, controlled by TOSHIO. See n. 5.

[13]    See notes 5, 10 and 11, supra, and exhibits C, I, J, K, L, M, O and P.



<u>See</u> notes 5, 10 and 11. <u>See also</u> Deposition of Toshio's son, Satoshi Kinoshita,

Exhibit Q at 29, 45.[14]

The following, according to Plaintiff's Second Amended Complaint, is how

TOSHIO wielded his total control of the Sport Shinko organization in dealing with

his Japan creditors:

- ✓ "SS Japan borrowed hundreds of millions of dollars from Japan-based lenders . . . [and] in turn loaned those funds to its overseas subsidiaries, including Plaintiff, which loaned funds to local subsidiaries, including DEBTOR." Cplt ¶ 12.

- ✓ "In the late 1990's a quasi-governmental Japan entity known as the Resolution and Collection Corporation (the "RCC") received an assignment of the majority of SS Japan's [bank] debt and became SS Japan's major creditor. The RCC was charged with collecting non-performing loans assigned to it." Cplt ¶ 13.

- ✓ "The RCC engaged SS Japan in extended negotiations regarding repayment. SS Japan approached RCC with repayment proposals that included sales proceeds of assets in Hawai'i and elsewhere." Cplt ¶ 14.

- ✓ "In or about May, 2000, the RCC began legal actions to collect on debt that was secured by SS Japan's property and assets in Japan." Cplt ¶ 15.

- ✓ "SS Japan continued to make repayment proposals involving Hawaii assets." Cplt ¶15.

---

[14]    "[I]n the case of our company, [TOSHIO] was essentially like a sole shareholder. He wielded complete authority . . ." Exhibit Q at 29.

"Q: . . . What's the scope of your authority versus [TOSHIO's] authority?
"A: I had virtually zero in the way of authority. I would consult with the general managers of the various golf course and hotel properties and then look to [TOSHIO] to make decisions. . . . He had – yes, virtually plenary authority." Exhibit Q at 45.

Two things become apparent from these allegations.  First, it was SS-JAPAN that was in financial trouble in Japan – not its subsidiaries.  Yet, TOSHIO was offering property to SS-JAPAN'S Japan creditors that was not technically owned by SS-JAPAN, but rather owned by a subsidiary three tiers away from SS-JAPAN.

These allegations concede – and underscore – TOSHIO'S power, via SS-JAPAN, to control the "Hawaii assets," and indeed, any asset in any subsidiary of SS-JAPAN.  According to the Complaint, TOSHIO could simply ignore the 'separate legal entity' status of each of the corporate subsidiaries, and deal with them – and their assets – as he pleased.

Second, SS-JAPAN'S creditors also saw the Sport Shinko organization as an alter ego of TOSHIO.   According to the Complaint, the RCC believed it could 'pierce the corporate veils' all the way from SS- JAPAN right down to the Hawaii properties owned by *sub-sub-sub*sidiaries of SS-JAPAN.  Cplt ¶ 15; Exhibits H-1, H-2 and H-4 at ¶ 15; H-3 at ¶ 22.

## IV.   PLAINTIFF ALLEGES TOSHIO EXERCISED HIS CONTROL TO 'CAUSE' THE 'FRAUDULENT TRANSFER'

Plaintiff alleges TOSHIO 'caused' the alleged 'fraudulent transfer' from SS-MILILANI to KG.  Cplt ¶ 44.  For the purposes of this Motion, this is assumed true.

12

Once again, Plaintiff's allegation provides the undoing of its case.  In order to cause the 'fraudulent transfer' as alleged, TOSHIO would necessarily have had to exercise his ownership control over both the alleged CREDITOR and the alleged DEBTOR.  He would have had:

 \* to 'cause' SS-JAPAN

  \* to 'cause' SS-USA –  the **'<u>victim</u>'**

   \* to 'cause' SS-HAWAII

    \* to 'cause' SS-MILILANI – the '**<u>perpetrator</u>'**



     \* to 'fraudulently transfer' the "Mililani Properties" to KG.

To accomplish the same objective, TOSHIO could have exercised his <u>operational</u> control of the companies, ignored the intermediate corporate entities, and – as Director and President of SS-MILILANI – simply sold the property to KG.  <u>See</u> Exhibit I.

Regardless of how the sale was effectuated mechanically, according to Plaintiff, TOSHIO'S motive was to defraud his Japan creditors:

> "['**The Plan**' was to] transfer assets held by DEBTOR and Plaintiff's other subsidiaries in Hawaii outside the reach of the RCC and other creditors.  The plan entailed, among other things, transferring ownership and/or management rights over DEBTOR's assets to a person(s) or entity(ies) that were to be secretly controlled by some or all of the Insiders."  Cplt ¶ 16.

13

According to the Complaint, step one of **THE PLAN** was when TOSHIO

created a 'management company', Resort Management Services (Hawaii), Inc.

("RMS"), that was run by TOSHIO's 'strawman' – Nishida (an officer of SS-

HAWAII) – and secretly funded by TOSHIO.  Cplt ¶¶ 17, 18, 22.

Step two was when Nishida gave TOSHIO a "secret option" to purchase all

of the stock in RMS for $1,500.  Cplt ¶¶ 20, 21.

Step three was when TOSHIO exercised his total control over SS-

MILILANI and caused it – and all the other Hawaii subsidiaries – to enter into a

"Management Agreement" with RMS:

> "Among other things, the Management Agreements required
> DEBTOR and the Sister Companies [the other SS JAPAN subsidiaries
> in Hawaii[15]] to pay management fees . . . and the payment of

---

[15]     Plaintiff defines "Sister Companies" as "the DEBTOR, and other Hawai'i-based subsidiaries of [SS-Hawaii] for which Insiders served as officers and/or directors . . ."  Cplt ¶ 24.  The "Sister Companies" therefore include SS-Hawaii and the "Debtors"/fraudulent transferors in each of the lawsuits – SS-Mililani, SS-Kauai, SS-Waikiki and SS-Pukalani.

"Sister companies" also includes Pukalani STP Co., Ltd., the owner of a sewage treatment plant adjacent to the "Pukalani Properties" on Maui, which was also purchased by KG at the same time the golf courses and hotels were acquired.  See Cplt ¶ 36 (KG offered to "purchase **all** of the assets of DEBTOR and the Sister Companies.") and Exhibit S at A12370, item (f), and discussion infra at VII, pp. 23-25.

While plaintiff (and the other plaintiff in two of these consolidated cases, SS-Japan) has filed lawsuits over the hotels and golf courses, they have not filed suit for rescission of the sale of the sewage plant, which was part of one sales transaction with KG, and which played a significant role in the valuation of the purchase.

Prior to KG's offer, the Complaint reveals no other offers to purchase all of

substantial termination fees if the managed properties were transferred without RMS's consent and the transferee would not assume the Management Agreement (the 'Termination Fees').  The Termination Fees totaled $3.5 million." Cplt ¶ 25.

The Complaint further alleges that the purpose of these Management Agreements was to make it more difficult for TOSHIO'S <u>Japan creditors</u> to "seek any recovery from those assets."  Cplt ¶ 27.  Indeed, it is alleged, anyone taking over the Hawaii companies, including a creditor, would be faced with paying a huge termination fee to RMS, and hence, to TOSHIO.  Cplt ¶¶ 20, 25.

<u>Step four</u> of **THE PLAN** -- according to Plaintiff -- occurred in October of 2000 when TOSHIO – via his "insider" sons and "insider" straw man – exercised the RMS option.  Cplt ¶¶ 8, 21.  The net result was that TOSHIO – by controlling SS-JAPAN, that controlled SS-USA, that controlled SS-HAWAII, that controlled SS- MILILANI – had put in place a significant financial barrier to protect the "Mililani Properties" from TOSHIO'S Japan creditors.

As is obvious, all of Plaintiff's allegations concerning TOSHIO and **THE PLAN** – assumed to be true – simply underscore that TOSHIO necessarily had <u>complete control</u> over the CREDITOR and DEBTOR in this case.

## V.    <u>TOSHIO SELLS THE "MILILANI PROPERTIES" TO KG</u>

Apparently, there was a change of **THE PLAN**.  According to the

the Sports Shinko assets in Hawaii in one transaction.  <u>See</u> Cplt ¶ 41.

Complaint, the new plan was no longer to shield the "Mililani Properties" by way of the onerous RMS "Termination Fee," but now to sell the properties. And, it is alleged, TOSHIO rejected higher offers and sold the "Mililani Properties" to KG for less than market value. Cplt ¶¶ 41, 42, 44, 77.

The net result of this modified plan – perpetrated by TOSHIO, other "self-dealing insiders" (Cplt ¶¶ 65, 69, 71, 73) and <u>KG</u> – is that TOSHIO got less for the "Mililani Properties" (and the other hotel, golf course and development properties transferred to the KG parties sued upon in the consolidated cases) than he could have gotten from other buyers, but instead of cashing in on the sham $3.5 million "Termination Fee" that he had set up through the sham 'Management Agreements,' the sole payday for all this trouble was -- a residence on Maui, to wit, the "Pukalani Residence" in Makawao, Maui. Cplt ¶ 47. <u>See also</u> Exhibits H-1, H-2 and H-4 at ¶ 47; Exhibit H-3 at ¶ 59.

For the purposes of this Motion, all this is assumed to be true.

## VI.    <u>THE CLAIMS AGAINST KG FAIL AS A MATTER OF LAW</u>

All the claims in this case against <u>KG</u> are predicated on an alleged violation of the Uniform Fraudulent Transfer Act. The claims are that KG violated the Act

itself,[16] or conspired with others to violate it.[17]  All of these claims, however, fail as a matter of law – and this is true no matter how the claims are fashioned, and no matter how direct or indirect KG's acts were alleged to be.

### A.    THE ACT ONLY APPLIES TO ARM'S LENGTH TRANSACTIONS

The Act is designed to protect creditors in an arm's length loan transaction and was obviously never intended to apply to the intra-company movement of money with or without attendant corporate niceties.  Indeed, otherwise, ***instead of preventing or undoing fraud, the Act would become a vehicle to commit fraud.***[18] Every time it was in a company's interest, the seller's 'inside creditor' could claim 'fraudulent transfer' and seek rescission to recover property conveyed by an 'inside debtor.'

As an example, assume:

\*        X controls Black Co. and White Co.

---

[16]      As is obvious from the Act, while a remedy is provided against transferees, it is the transfer**or** who violates the Act.  Accordingly, Counts I and II fail for this reason alone.  However, this is irrelevant in this Motion.

[17]      Counts I and II allege KG violated the Act; Counts III and IV allege KG aided and abetted/conspired with others who made the alleged fraudulent transfer; Count V alleges that KG aided and abetted/conspired with others to breach fiduciary duties to Plaintiff that resulted in the 'fraudulent transfer;' Count VII claims attorney's fees; Count VIII seeks rescission.

[18]      Fraud is also engendered because the creditor controlled – and continues to control – the debtor, thereby depriving the transferee to defenses it might otherwise have.  See n. 6, supra.

      \*      At X's direction, Black Co. loans money to White Co.

      \*      Thereafter, at X's direction, White Co. sells its only asset, Whiteacre, to A thereby making White Co. technically insolvent.

      \*      X chooses not to apply the sales proceeds from A to repay Black Co.'s loan to White Co.

A few months later, the real estate market improves and the value of Whiteacre has gone up.[19]  X – with a bad case of seller's remorse – wants to get Whiteacre back, or get more money from A.  If the Act can be used as the Plaintiff is using it in the present case, X can use the Act to accomplish his goal.

First, X 'causes' Black Co. to sue White Co. along with A.  Next, X causes White Co. to default (or lose a summary judgment).  As a result, Black Co. has a prima facie case under the Act that White Co. "intended" to defraud Black Co. and/or sold Whiteacre for less than a reasonably equivalent value to A.[20]

To keep Whiteacre, A now must assert its 'transferee' defenses under the Act[21] – (1) that it <u>bought</u> Whiteacre in "good faith" and (2) it <u>bought</u> it for a price that was "a reasonably equivalent" to the value of the property.

---

[19]      Most of the properties were transferred from the SS entities to the KG entities on January 25, 2002, just after the nadir of the Hawaii real estate market *following the 9/11 terrorist attacks*.  Virtually all of the transfers were completed by April 15, 2002.  Exhibit F at 16 (Interrogatory answer 31).  We note, however, that Sports Shinko has refused to correct an acknowledged defect in the deed transferring certain Maui real property, so title to those lands has still not transferred.  This will be the subject of a third party complaint against the SS company that improperly continues to hold title in due course.

[20]      HRS §§ 651C-4(a), -5.

[21]      HRS § 651C-8(a).

The problem, of course, is that with White Co.'s default there is already a judicial finding that White Co. sold Whiteacre for a price not " reasonably equivalent" to the value of Whiteacre.  So where does that leave A?  With a major problem.  He will now have to 'un prove' the judicial finding to keep Whiteacre. The way out for A, of course, is to avoid the risk of losing Whiteacre, and the costs of defending the suit, and pay Black Co. more for Whiteacre.  X, then, will have successfully used the Act to extort money from A.

Obviously, the Act was not intended to be a weapon to extort money, which is precisely what could happen if it applied to intra-company 'creditor' situations. The Act was designed to prevent fraud, not be a vehicle to commit fraud, and any interpretation with that result would be an absurdity unintended by the legislature that must be rejected by this Court. [22]

---

[22]    "[I]t is well settled that this court may depart from a plain reading of a statute where a literal interpretation would lead to absurd and/or unjust results.'" Morgan v. Planning Dept., County of Kauai, 104 Hawaii 173, 185, 86 P.3d 982, 994 (2004) (quoting Iddings v. Mee-Lee, 82 Hawaii 1, 15, 919 P.2d 263, 277 (1996); "[I]t is well-settled that 'statutory construction dictates that an interpreting court should not fashion a construction of statutory text that ... creates an absurd or unjust result.'" Nihi Lewa, Inc. v. Dept. of Budget & Fiscal Svcs., 103 Hawaii 163, 168, 80 P.3d 984, 989 (2003), quoting Dines v. Pacific Ins. Co., Ltd., 78 Hawaii 325, 337, 893 P.2d 176, 188 (1995);  "In considering the meaning of the words in a statute, 'the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality,'" Credit Associates of Maui, Ltd. v. Brooks, 90 Hawaii 371, 373, 978 P.2d 809, 811 (1999) (quoting Kim v. Contractors License Bd., 88 Hawaii 264, 270, 965 P.2d 806, 812 (1998) and citing HRS § 1-15(3) (1993) (providing that "every construction which leads to an absurdity shall be rejected".))

### B. THIS WAS NOT AN ARM'S LENGTH TRANSACTION BY THE TERMS OF THE ACT -- TOSHIO IS AN 'INSIDER' OF <u>BOTH CREDITOR AND DEBTOR</u>

The language of the Act also provides clear guidance how it is <u>not</u> to be used. Under the Act, a person is an "insider" of a debtor if

(1)     the person is 'in control' of the debtor,

(2)     is a director of the debtor, or

(3)     is an officer of the debtor.[23]

In the present case, Plaintiff <u>alleges</u> that TOSHIO was an "insider" of the DEBTOR – SS-MILILANI. Cplt ¶ 8. For the purposes of this Motion, this is assumed true.

Using the same criteria, however, TOSHIO was also an "insider" of the CREDITOR as defined in Act. As described above, TOSHIO had both <u>ownership</u> and <u>operational</u> control of SS-USA – he was a Director and the President of SS-USA, as well as the majority shareholder of SS-JAPAN, which owned the majority of the stock of SS-USA.[24]

---

[23]     <u>See</u> HRS § 651C-1 definition of "insider".

[24]     <u>See</u> Exhibits O, B at Bates 256 1013 and F at 13 (Admissions 25 and 26), respectively.

### C.    PLAINTIFF'S FAILURE TO SUE ITS 'SISTER COMPANY' CONFIRMS THERE WAS NO ARM'S LENGTH TRANSACTION

As indicated above, the Plaintiff/CREDITOR did not sue the alleged DEBTOR in this case for obvious reasons.  And, by not doing so, Plaintiff once again highlights why its case fails.

In a proper case under the Act, the debtor is a <u>necessary party</u> in any situation where the debt has not been reduced to a judgment or otherwise liquidated.  <u>See</u> n. 6.  Where the debtor is a defendant in a case under the Act, it has the opportunity to assert defenses to the alleged debt and might prove there was no valid debt to begin with, or the debt was less than claimed.

By not suing the debtor in this case – where there was clearly no liquidated debt – Plaintiff once again demonstrates there was never any arm's length loan and that TOSHIO was in control of both sides of the transaction.  Indeed, whatever 'defenses' the DEBTOR might have had were simply bypassed in Plaintiff's effort to seek its property back from KG.

### D.    PLAINTIFF IS THE WRONG PARTY TO BRING A CLAIM AGAINST KG UNDER THE ACT

Even if it is assumed that TOSHIO and his self-dealing "insiders" – in addition to <u>KG</u> – were trying to defraud his <u>Japan creditors</u> by selling the "Mililani Properties" to KG – as alleged by Plaintiff (at Cplt ¶¶ 16, 23-27) – that does not give ***THIS*** Plaintiff a cause of action under the Act – against anyone.  <u>The Japan</u>

21

<u>creditors of plaintiff (including RCC) could possibly have a cause of action under</u>

<u>the Act, but Plaintiff clearly does not</u>.

This is best illustrated by applying an 'alter ego' analysis to the undisputed

facts of this case.  This is not an 'alter ego' case because no creditor is attempting

to 'pierce the corporate veil' of any corporation to get to the assets of the real party

in control.

To the contrary, Plaintiff herein does not want to – and has not tried to –

'pierce the corporate veil' of SS-MILILANI as an arm's length creditor would be

expected to do when pursuing an insolvent debtor.  The reason for this is clear: if it

did this, it would find <u>itself</u> behind the veil:



Indeed, an arm's length creditor of SS-MILILANI would surely prove –

based on the plethora of evidence and admissions described above – that SS-

MILILANI was totally owned and controlled by SS-HAWAII, that it was the 'alter

ego' of SS-HAWAII, that the 'alter ego' participated in the 'fraud' on the creditor,

and that as a matter of policy the corporate 'veil' should be pierced so the creditor

would have access to the assets of SS-HAWAII.[25]

---

[25]    See generally, <u>Robert's Hawaii School Bus, Inc. v. Laupahoehoe Trans. Co.</u>,
<u>Inc.</u>, 91 Hawaii 224, 241-243, 982 P.2d 853, 871-873 (1999).

Next, assuming there were still insufficient assets, an arm's length creditor would attempt to pierce the corporate veil of SS-HAWAII to get to its parent, SS-USA; then attempt to piece the corporate veil of SS-USA to get to its parent, SS-JAPAN; then attempt to pierce the corporate veil of SS-JAPAN to get to TOSHIO.

Of course, SS-USA has not tried this in this case for the obvious reason that it ends up suing itself. And this fact alone shows that SS-USA is not a 'creditor' for whom there is a remedy under the Act.

## VII. WHAT REALLY HAPPENED – TOSHIO FOUND A BUYER THAT WOULD TAKE *ALL* OF THE HAWAII ASSETS – *GOOD AND BAD* – IN A BULK SALE

This becomes clear by simply reviewing the pleadings in this and the four essentially identical cases, and by observing a few facts that plaintiff cannot reasonably dispute.

### A. PLAINTIFFS ATTEMPTED TO PLEAD AROUND THE FACT THAT THERE WAS A BULK SALE TO KG

As noted, this is one of 5 consolidated lawsuits. Each lawsuit alleges:

- The 'debtor' owned a particular piece of property (see Cplt ¶ 9; Exhibits H-1, H-2 and H-4 at ¶ 9; Exhibit H-3 at ¶ 16);

- The debtor had offer(s) to buy at least some of the Hawaii properties (see Cplt ¶ 41; Exhibits H-1, H-2 and H-4 at ¶ 41; Exhibit H-3 at ¶ 49);

- The debtor rejected higher offer(s) (see Cplt ¶¶ 41, 44; Exhibits H-1, H-2 and H-4 at ¶¶ 41, 44; Exhibit H-3 at ¶¶ 49, 54);

- The debtor fraudulently transferred the property to KG for an amount not reasonably equivalent to the value of the particular property (see Cplt ¶ 51; Exhibits H-1, H-2 and H-4 at ¶ 51; Exhibit H-3 at ¶ 67).

23

Based on these allegations, each plaintiff effectively asserts it was damaged in the amount of the difference between the fair market value of the property and what KG paid for it, of course, not to exceed the amount of their 'creditor's claim'. See, Cplt ¶¶ 41, 42, 44, 51 and 52; Exhibits H-1, H-2 and H-4 at ¶¶ 41, 42, 44, 51 and 52; Exhibit H-3 at ¶¶ 49, 54, 56, 67 and 68.

A gaping hole emerged in Plaintiff's case, however, when it attempted to plead around what actually happened, to wit, that there were no individual sales for the "Hawaii properties" and they were **all sold in bulk to KG for a single price**[26] –notwithstanding the 5 separate cases (discussed below).

And, as clear from the five complaints, the gaping hole is that no plaintiff ever alleged what amount KG 'paid' for the individual piece of property involved in that particular case that was not 'reasonably equivalent' to the value of that property. This, of course, could not be alleged for the simple fact that nothing was offered – and nothing was paid – for the individual pieces of property.

---

[26]    Plaintiff tacitly acknowledges the bulk sale in ¶ 41 of the Complaint when shifting from the claim of the plaintiff to the claims of all the 'sister companies':

"The contract price was below the fair market value of the assets to be sold and substantially less than **the aggregate value** of competing offers from qualified buyers that the Insiders had previously rejected."

Emphasis added.  See also Exhibits H-1, H-2 and H-4 at ¶ 41; Exhibit H-3 at ¶ 49.

24

### B.    THE BULK SALE INCLUDED ANOTHER "HAWAII PROPERTY" – A SEWAGE TREATMENT PLANT IN MAUI

While each plaintiff in each of the five cases alleges that Sport Shinko wanted to sell the "Hawaii properties," no plaintiff defines exactly what those were, and leaves the impression that it was only the two hotels, three golf courses and development land specifically raised in the lawsuits.

The irrefutable fact, however, is that Sport Shinko had another "Hawaii property" – an aging and problematic sewage treatment plant in Maui.[27]  The following are also irrefutable:

- This sewage treatment plant – along with the properties in these lawsuits – was part of the bulk sale to KG[28]
- There were no individual 'sales' of any of the "Hawaii properties"[29]
- The bulk sale of all the "Hawaii properties" was for $22 million[30]

Aside from the fact that all of these cases fail for the reasons outlined above, they also fail for the obvious reason that there is no claim in any of these cases that

---

[27]    See Exhibit S (excerpts from Purchase and Sale Agreement between KG Holdings, LLC and the SS Hawaii entities ("PSA")) at Schedule 4.1g, item 4 (Bates A012493) and Schedule 5.4(c), item 4 (Bates A12497).

TOSHIO's son, Satoshi, executed the PSA for the SS Hawaii entities only after he was instructed to do so by Toshio.  Exhibits Q at 166-67, 262; Exhibit S at Bates A12394-95.

[28]    See Exhibit S at Bates A12370, item (f); A12368 (definition of "Property").

[29]    See Exhibit S at Bates A12372, item 2.1, A12368 (definition of "Property"); Bates A12386 at item (d); and Exhibit T, Buyer's Notice Pursuant to Purchase and Sale Agreement, at Bates A12505; A12509.

[30]    See Exhibit S at Bates A12372, item 2.1

25

the sale price of **all** the "Hawaii properties" to KG– including the sewage treatment plant – was for a price not reasonably equivalent to the value of all the assets, after netting out the liability presented by the sewage treatment plant.[31]

Indeed, the issue in a properly pled case would be whether the amount KG paid for **all** the 'Hawaii assets' was "reasonably equivalent value", not whether Sports Shinko could have sold <u>some</u> of the individual properties– excluding the sewage treatment plant – for a greater amount.  Plaintiffs, however, have not pled this case, and thus the cases as pled fail for yet another reason.

## VIII.  <u>CONCLUSION</u>

The Act was designed from the outset (in 1570 A.D.[32]) to protect creditors from secret transactions, among other things.  There was no 'secret' transaction in this case.  Indeed, in this case the 'insiders' were on both sides of the loan transaction, and in addition to the axiom that a party cannot be the victim of his own fraud, it is likewise fairly obvious that a party cannot keep a secret from itself.

---

[31]    The Complaint also fails to take into account that the bulk sale provided very significant value to Sports Shinko because KG agreed to honor SS's commitment to its "Ocean Resort Club" and "Royal Green Club" members to provide discount golf and hotel rooms in Hawaii.  <u>See</u> Exhibit S at Bates A12371, item 1.2(e).

[32]    The Act is the modern incarnation of the Statute of 13 Eliz. I, ch. 5.  7A Unif. L. Annot. Uniform Fraudulent Transfer Act (1984 Act), Prefatory Comment (1999 ed.)

As demonstrated above, there are no material facts in dispute relating to this Motion. They have all been admitted in the pleadings, not refuted, or are irrefutable. And, those facts establish, as a matter of law, this plaintiff has no cause of action under the Act -- or otherwise -- against KG.

Accordingly, it is respectfully submitted that judgment be entered in this case in favor of the KG Defendants.

DATED: Honolulu, Hawaii, January 13, 2006.

/s/ Robert A. Marks
WARREN PRICE, III
ROBERT A. MARKS

Attorneys for Defendants
KIAHUNA GOLF CLUB, LLC,
KG KAUAI DEVELOPMENT, LLC,
PUKALANI GOLF CLUB, LLC,
KG MAUI DEVELOPMENT, LLC,
MILILANI GOLF CLUB, LLC,
QK HOTEL, LLC, OR HOTEL, LLC,
AND KG HOLDINGS, LLC

27

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following on January 13, 2006 as follows:

Served electronically through CM/ECF:

PAUL ALSTON, ESQ.
palston@ahfi.com

Attorney for Plaintiffs
SPORTS SHINKO CO., LTD. and
SPORTS SHINKO (USA) CO., LTD.

Served by hand delivery:

GLENN T. MELCHINGER, ESQ.          WILLIAM BORDNER, ESQ.
Alston Hunt Floyd & Ing            JOHN REYES-BURKE, ESQ.
American Savings Bank Tower        Burke McPheeters Bordner & Estes
1001 Bishop Street, 18th Floor     Pacific Guardian Center
Honolulu, Hawaii  96813            Mauka Tower
                                   737 Bishop Street, Suite 3100
Attorney for Plaintiffs            Honolulu Hawaii 96813
SPORTS SHINKO CO., LTD. and
SPORTS SHINKO (USA) CO., LTD.      Attorneys for Defendant
                                   FRANKLIN K. MUKAI

DATED:  Honolulu, Hawaii, January 13, 2006.


/s/ Robert A. Marks
WARREN PRICE III
ROBERT A. MARKS

Attorneys for Defendants
KIAHUNA GOLF CLUB, LLC,
KG KAUAI DEVELOPMENT, LLC,
PUKALANI GOLF CLUB, LLC,
KG MAUI DEVELOPMENT, LLC,
MILILANI GOLF CLUB, LLC,
QK HOTEL, LLC, OR HOTEL, LLC,
AND KG HOLDINGS, LLC