ORIGINAL

# EXCLUSIVE AGREEMENT TO
# MARKET REAL ESTATE
("Agreement")

**THIS AGREEMENT** is dated the 27th day of November, 2000, by and between Colliers Monroe Friedlander, Inc., a licensed real estate broker in the state of Hawaii ("Broker"), having an address of 220 South King Street, Suite 1800, Honolulu, Hawaii 96813, and Sports Shinko (Waikiki) Co., Ltd., a Hawaii corporation (hereinafter referred to as "Seller"), having an address of 175 Paoakalani Street, Honolulu, Oahu, Hawaii.

**Term**

This Agreement shall take effect on the date this Agreement is signed by the Seller ("Effective Date") and shall terminate six (6) months after commencement of the Active Marketing of the Property, as further defined herein, unless otherwise extended in writing by the Parties hereto. Upon the natural termination of this Agreement as provided for herein, the Agreement shall automatically extend on a month-by-month basis without further acknowledgement by either Seller or Broker, provided either party shall have the right to cancel this Agreement at any time (after the initial 6-month listing term) by providing the other party with thirty (30) days advance written notice of such termination.

**Authority**

Seller places with Broker and hereby exclusively and without revocation authorizes Broker to sell the Property listed and generally described on the Schedule A attached hereto and made a part hereof (the "Property" and "Hotel"), through a marketing program implemented and coordinated by Broker. During the term of this Agreement, Seller, Seller's representatives, employees and consultants shall immediately refer to Broker any and all inquiries Seller or said representatives, employees and/or consultants may receive or solicit pertaining to the disposition of the listed Property, as well as all previous inquiries that Seller has received during the past 12 months. Seller further acknowledges that there are no exclusions or exceptions to this Agreement except for those outlined in this Agreement. Seller (or a legally empowered representative) agrees to fully cooperate with Broker in the offering and sale of the Property and to otherwise cooperate with Broker in carrying out the purpose of this Agreement.

**Fee Simple Land Owners**

Seller is hereby made aware that Broker is working with the owners of the fee simple land interest in the Property, Kenneth S. Morita, etal., and Pacific Holiday, Inc. (collectively the "Fee Owner"), to identify the opportunity of jointly marketing both Seller's leasehold interest in the Hotel and the encumbered fee land interests under the Hotel owned by Fee Owner. Broker shall conduct such discussions and negotiations at Broker's own expense.

Seller understands and shall allow Broker to list for sale the Fee Owner's

Seller Initials **SK**

Broker Initials **ADS**

EXHIBIT
23  4-20-5
S. Kinoshita

EXHIBIT 2

*Agreement*
Ocean Resort Hotel – Waikiki
Sports Shinko (Waikiki) Co., Ltd. – Seller
Colliers Monroe Friedlander, Inc. – Broker
Monday, November 27, 2000
Page 2 of 14

encumbered land interest in the Property ("Fee Land Interest") in an effort to package the Seller's leasehold interest and the Fee Land Interest and offer the Hotel as a potential fee simple asset in the marketplace. Seller understands that Broker shall be compensated by the Fee Owner for Broker's efforts in selling the Fee Land Interest. In doing so, Broker shall not be deemed in breach of this Agreement or its fiduciary relationship with Seller.

Broker's effort to negotiate the listing of the Fee Land Interest shall take place immediately upon execution of this Agreement, and Seller understands that the marketing effort for the Hotel shall be delayed until Broker has had adequate opportunity to work with the Fee Owner in Broker's effort to list the Fee Land Interest. Broker agrees to keep Seller informed as to Broker's efforts and progress with the Fee Owner in this regard.

Broker shall immediately notify Seller in writing when it has a reasonable expectation that its representation of the Fee Owner will be in direct conflict with its representation of the Seller to the detriment of Seller.

**Marketing Program**

The Active Marketing program shall be conducted in two distinct stages. The first stage shall be *Confidential Marketing*, followed, if necessary, by *Aggressive International Marketing*, as described below.

*Confidential Marketing*
Prior to Actively Marketing the Property, Broker shall gather all information on the Property that the Seller has in its possession, in addition to data on the real estate market. During the *Confidential Marketing* phase of Active Marketing, these materials shall be presented to serious buyer candidates, after the execution of a confidentiality agreement, either in printed form, on CD-ROM or via the Internet. During the *Confidential Marketing* stage of the sales effort by Broker, the Property will be exposed only to investors known to Broker to be (a) currently in the Hawaii marketplace, and (b) currently active in acquiring hotel and/or resort properties in the $20 million to +$100 million range. "Active Marketing" shall be deemed to have commenced upon Broker's written notice to Seller of Broker's intention to commence the *Confidential Marketing* portion of the Active Marketing of the Hotel.

*Aggressive International Marketing*
In the event the Confidential Marketing effort does not produce a group of

Seller Initials SK

Broker Initials AJF

*Agreement*
Ocean Resort Hotel ~ Waikiki
Sports Shinko (Waikiki) Co., Ltd. ~ Seller
Colliers Monroe Friedlander, Inc. ~ Broker
Monday, November 27, 2000
Page 11 of 14

**Counterparts**    This Agreement may be executed and delivered in any number of counterparts, each of which so executed shall, irrespective of the date of its execution and delivery, be deemed an original or duplicate original, and all of which together shall constitute one and the same instrument or agreement. In making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart that has attached thereto photocopies of the signatures or signature pages of all of the parties hereto.

**Applicable Law**    This Agreement shall be binding upon the parties hereto, their heirs, successors and assigns and shall be governed by and construed under the law of the State of Hawaii.

**Facsimile**    The Parties hereto and their respective successors and assigns are hereby authorized to rely upon the signatures of each person and entity on this Agreement which are delivered by facsimile as constituting a duly authorized, irrevocable, actual, current delivery of this Agreement with original ink signatures of each person and entity.

**Corporate Authority**    Each individual signing below represents and warrants that each of them has the requisite authority to bind the respective party hereto on whose behalf each of them is signing.

In witness whereof, the parties hereto have duly executed this Agreement effective as of the date set forth below.

SELLER:    *Sports Shinko (Waikiki) Co., Ltd.*    Date: November 27, 2000

PRINT NAME:    Satoshi Kinoshita
PRINT TITLE:    Executive Vice President

Seller Initials  SK
Broker Initials

*Agreement*
Ocean Resort Hotel ~ Waikiki
Sports Shinko (Waikiki) Co., Ltd. ~ Seller
Colliers Monroe Friedlander, Inc. ~ Broker
Monday, November 27, 2000
Page 12 of 14

SELLER CONTACT:    Attention: Satoshi Kinoshita, Ph.D.
                   Sports Shinko (Waikiki) Co., Ltd.
ADDRESS:           175 Paoakalani Street, Suite 300
                   Honolulu, Hawaii 96815
PHONE:             (808) 931-4395
FAX:               (808) 931-4396
E-MAIL:            satoshi@sportsshinkohawaii.com


BROKER:            *Colliers Monroe Friedlander, Inc.*   Date: November 28, 2000

BY:
PRINT NAME:        Andrew D. Friedlander
                   *Chief Executive Officer*

ADDRESS:           220 South King Street, Suite 1800
                   Honolulu, HI 96813
PHONE:             808-524-2666
FAX:               808-521-0977
E-MAIL:            mfi@pixi.com


Seller Initials *SK*

Broker Initials *ADF*

Seller Initials _SK_

Broker Initials _ADF_

## Schedule B

This Schedule B is made part of the Exclusive Agreement to Confidentially Market Real Estate dated November 27th, 2000, by and between Colliers Monroe Friedlander, Inc. ("Broker") and Sports Shinko (Waikiki) Co., Ltd. ("Seller").

SEE THE FOLLOWING SPREADSHEET LIST.

Seller Initials _SK_

Broker Initials _ADF_

# EXCLUSIVE AGREEMENT TO
# CONFIDENTIALITY MARKET REAL ESTATE
## ("Agreement")

**THIS AGREEMENT** is dated the 11th day of August, 2000, by and between Colliers Monroe Friedlander, Inc., a licensed real estate broker in the state of Hawaii ("Broker"), having an address of 220 South King Street, Suite 1800, Honolulu, Hawaii 96813, and Sports Shinko (Kauai) Co., Ltd., a Hawaii corporation, and Sports Shinko (Pukalani) Co., Ltd., a Hawaii corporation (hereinafter collectively referred to as "Seller"), having an address of 175 Paoakalani Ave Suite 300, Honolulu, Hawaii 96815.

| | |
|---|---|
| **Term** | This Agreement shall take effect on the date this Agreement is signed by the Seller ("Effective Date") and shall terminate six (6) months after commencement of the Active Marketing of the Properties, as further defined herein, unless otherwise extended in writing by the Parties hereto. |
| **Authority** | Seller places with Broker and hereby exclusively and without revocation authorizes Broker to sell the two (2) properties listed and generally described on the Schedule A attached hereto and made a part hereof (collectively the "Properties"), through a confidential marketing program implemented and coordinated by Broker. During the term of this Agreement, Seller, Seller's representatives, employees and consultants shall immediately refer to Broker any and all inquiries Seller or said representatives, employees and/or consultants may receive or solicit pertaining to the disposition of the listed Properties, as well as all previous inquiries that Seller has received during the past 12 months. Seller further acknowledges that there are no exclusions or exceptions to this Agreement except for those outlined in this Agreement. Seller (or a legally empowered representative) agrees to fully cooperate with Broker in the offering and sale of the Properties and to otherwise cooperate with Broker in carrying out the purpose of this Agreement. |
| **Marketing Program** | *Confidential Marketing*<br>Prior to actively marketing the Properties, Broker shall gather all information on the Properties that the Seller has in its possession, in addition to data on the real estate market. These materials shall be presented to serious buyer candidates, after the execution of a confidentiality agreement, either in printed form, on CD-ROM or via the Internet. During the Active Marketing stage of the sales effort by Broker, the Properties will be exposed only to investors known to broker to be (a) currently in the Hawaii marketplace, and (b) currently active in acquiring golf course and/or development properties in the $10 million to $100 million range. |

Seller Initials _SK_

Broker Initials _MDF_



EXHIBIT 8a

24 4-20-05

S. Kinoshita

*Agreement*
Kiahuna Country Club ~ Kauai
Pukalani Country Club ~ Maui
Sports Shinko (Kauai) Co., Ltd. ~ Seller
Sports Shinko (Pukalani) Co., Ltd. ~ Seller
Colliers Monroe Friedlander, Inc. ~ Broker
Thursday August 10, 2000
Page 10 of 14

In witness whereof, the parties hereto have duly executed this Agreement effective as of the date set forth below.

SELLER:        *Sports Shinko (Kauai) Co., Ltd.*        Date: 8/11/2000

PRINT NAME:        Satoshi    Kinoshita
PRINT TITLE:        Vice President

SELLER:        *Sports Shinko (Pukalani) Co., Ltd.*        Date: 8/11/2000

PRINT NAME:        Satoshi    Kinoshita
PRINT TITLE:        Vice President

SELLER CONTACT:        Attention: Satoshi Kinoshita

ADDRESS:        Sports Shinko (Hawaii) Co., Ltd.

        175 Paoakalani Street, Suite 300

        Honolulu, Hawaii 96815

PHONE:        (808) 931-4395

FAX:        (808) 931-4396

E-MAIL:        satoshi@sportsshinkohawaii.com

Seller Initials SK
Broker Initials APR

*Agreement*
Kiahuna Country Club ~ Kauai
Pukalani Country Club ~ Maui
Sports Shinko (Kauai) Co., Ltd. ~ Seller
Sports Shinko (Pukalani) Co., Ltd. ~ Seller
Colliers Monroe Friedlander, Inc. ~ Broker
Thursday August 10, 2000
Page 11 of 14

WITH COPY TO:         Attention; Tsugio Fukuda

Sports Shinko Co., Ltd.

3-7, Kanda-Ogawamachi

Chiyoda-ku, Tokyo 101-0052 Japan

Phone: 011-813-5259-1500

Fax:    011-813-5259-1530

E-Mail: fukuda@sportsshinko.co.jp


BROKER:         *Colliers Monroe Friedlander, Inc.*   Date: 8-30-00

BY:
PRINT NAME:     Andrew D. Friedlander
                *Chief Executive Officer*

ADDRESS:        220 South King Street, Suite 1800
                Honolulu, HI 96813
PHONE:          808-524-2666
FAX:            808-521-0977
E-MAIL:         mfi@pixi.com


Seller Initials SK

Broker Initials ADF

*Agreement*
Kiahuna Country Club ~ Kauai
Pukalani Country Club ~ Maui
Sports Shinko (Kauai) Co., Ltd. ~ Seller
Sports Shinko (Pukalani) Co., Ltd. ~ Seller
Colliers Monroe Friedlander, Inc. ~ Broker
Thursday August 10, 2000
Page 12 of 14

## Schedule A

This Schedule A is made part of the Exclusive Agreement to Confidentiality Market Real Estate dated August 11, 2000, by and between Colliers Monroe Friedlander, Inc. ("Broker") and Sports Shinko (Kauai) Co., Ltd. and Sports Shinko (Pukalani) Co., Ltd. ("Seller").

**Property Description:**

The Properties consists of the fee simple interest in the Kiahuna Country Club in Poipu, Kauai, Hawaii ("Kiahuna"), and the Pukalani Country Club in Maui, Hawaii ("Pukalani"). They are further described as follows:

*Kiahuna Country Club*
Address:    Rural Route One, Box 78, Koloa, Kauai, Hawaii 96756
Area:       Approximately 321 acres of fee simple land, including all improvements thereon.
TMK:        (4) 2 – 8, Plat 14, Parcels: 7, 8, 28, and 31 through 36,
            (4) 2 – 8, Plat 15, Parcel 77

*Pukalani Country Club*
Address:    360 Pukalani Street, Pukalani, Maui, Hawaii 96768
Area:       Approximately 224 acres of fee simple land, including all improvements thereon.
TMK:        (2) 2 –3, Plat 8, Parcels 5 & 36
            (2) 2 –3, Plat 9, Parcels 4, 39 & 40
            (2) 2 –3, Plat 47, Parcel 126
            (2) 2 –3, Plat 48, Parcels 88 & 125
            (2) 2 –3, Plat 55, Parcels 68 & 69
            (2) 2 –3, Plat 56, Parcels 95 through 98
            (2) 2 –3, Plat 57, Parcels 121, 124 & 138
            (2) 2 –3, Plat 61, Parcel 114

Seller Initials  SK

Broker Initials

*Agreement*
Kiahuna Country Club ~ Kauai
Pukalani Country Club ~ Maui
Sports Shinko (Kauai) Co., Ltd. ~ Seller
Sports Shinko (Pukalani) Co., Ltd. ~ Seller
Colliers Monroe Friedlander, Inc. ~ Broker
Thursday August 10, 2000
Page 13 of 14

## Pricing of Properties

Listed Price:   Kiahuna Country Club ~ $ 42,000,000.00

Pukalani Country Club ~ $ 29,000,000.00

Note, Seller reserves the right, to any time or from time to time, to instruct Broker to market the Properties at a different Listed Price. Said Seller instruction to Broker must be in writing.

## Fees & Costs

Marketing Fee:      $10,000.00 payable upon execution of this Agreement.

Sellers
Commission:      Four percent (4%) of the gross sales price, or value exchanged, plus the applicable Hawaii state general excise tax, payable through escrow at closing. Broker shall not be obligated to share its commission with any other party or broker. Broker's commission shall be reduced by the amount of the Marketing Fee paid by Seller to Broker.

Seller Initials  SK

Broker Initials

## Schedule B

This Schedule B is made part of the Exclusive Agreement to Confidentiality Market Real Estate dated August 11th, 2000, by and between Colliers Monroe Friedlander, Inc. ("Broker") and Sports Shinko (Kauai) Co., Ltd. and Sports Shinko (Pukalani) Co., Ltd. ("Seller").

SEE THE FOLLOWING SPREADSHEET LIST.

Seller Initials SK

Broker Initials ADF

***ATTORNEY-CLIENT PRIVILEGE***                194

1        I, SATOSHI KINOSHITA, hereby certify that I

2   have read the foregoing typewritten pages 96

3   through page _____, inclusive, and corrections, if any

4   were noted by me, and the same is now a true and

5   correct transcript of my testimony.

6              DATED:   Honolulu, Hawaii, _____

7

8

9              _____

10             SATOSHI KINOSHITA

11

12  Signed before me this _____

13  day of _____, 2005.

14

15  _____

16

17

18

19

20

21

22  Case:      SPORTS SHINKO, ET AL vs. RMS, ET AL

23  Case No:  02-1-2766-11 (EEH)

24  Deposition Dated:   April 20, 2005

25  Taken By: Barbara Acoba

MAY 0 2 2005

RALPH ROSENBERG COURT REPORTERS
Honolulu, Hawaii   (808) 524-2090

***ATTORNEY-CLIENT PRIVILEGE***          100

1              CONTINUED EXAMINATION

2    BY MR. MELCHINGER:

3        Q.    Good morning, Mr. Kinoshita.    I'll remind you

4    that you're still under oath.    We left off yesterday

5    talking about which properties had been decided to be

6    sold off in Hawaii, and I think we ended the day with

7    the understanding that Mililani Golf Course and the

8    Queen Kapiolani Hotel would not be sold off; is that

9    right?

10              MR. KOMEIJI:    As of October 2000.

11   BY MR. MELCHINGER:

12       Q.    As of October 2000.

13       A.    Yes.

14       Q.    Do you know why Mililani Golf Course and Queen

15   Kapiolani were not going to be sold with the other

16   properties?

17       A.    Yes.    Pursuant to the president's instructions

18   and pursuant to the explanation that I received from the

19   president, the president did not want to sell the

20   Mililani Golf Course or the Queen Kapiolani Hotel

21   because he deemed them strategically important due to

22   the fact that those two properties enjoy particularly

23   heavy usage among Japanese golf course members.

24       Q.    So the other ones would be -- the other

25   properties would be sold to pay back some of the debt to

***ATTORNEY-CLIENT PRIVILEGE***          123

1    here in this document.

2        Q.   But you do recall discussing what's in

3    paragraph number one with Mr. Mukai; is that right?

4        A.   The document states that we had three meetings,

5    however, I don't recall.  I forget.

6        Q.   I think you just -- my understanding of your

7    testimony here before is that you don't recall anything

8    beyond what you see in this document, number 22.  Does

9    that mean you do recall what is in this document now?

10       A.   I am the person who authored this document and

11   I believe that I was reporting to the president what I

12   had been told.  However, as I sit here today, I don't

13   have a specific recollection other than the fact that

14   this is certainly something that I authored.

15       Q.   So you don't remember the details about

16   anything else that you discussed that led up to your

17   drafting Exhibit 22, then?

18       A.   That's right.

19           MR. MELCHINGER:  Let's mark that 23.

20           (Exhibit 23 marked for identification.)

21   BY MR. MELCHINGER:

22       Q.   Handing you what has been marked Exhibit 23 to

23   your deposition.  Could you tell me if you recognize

24   this document and what it is, when you've had a chance

25   to review it of course.

1      A.    I have seen this document before.

2      Q.    Is that your signature on page 11 of 14 in the

3   document?

4      A.    Yes.

5      Q.    And those are your initials on each page of the

6   document?

7      A.    Yes.

8      Q.    And can you tell me what this is?   What

9   document this is?

10      A.    This is a listing contract with Colliers Monroe

11   Friedlander regarding the sale of the Ocean Resort Hotel

12   Waikiki.

13      Q.    And the date, at least on the front page of

14   this, that's typed in is, it's the first line,

15   November 27, 2000; is that right?

16      A.    Yes.

17      Q.    And I think on page 11 of 14 it says the date

18   that you signed it seems to be indicated November 27,

19   2000.   Does that sound like about the time that you

20   signed this document?

21      A.    Yes.

22      Q.    So about, I think you testified before, then,

23   around October of 2000, there was a decision made to

24   list and market Ocean Resort Hotel and also the Kiahuna

25   Golf Course and the Pukulani Country Club, correct?

***ATTORNEY-CLIENT PRIVILEGE***          125

1          MR. KOMEIJI:   I think it misstates his

2     testimony.

3          MR. MELCHINGER:   Let him clarify.   That's fine.

4          THE WITNESS:   First of all, around June or July

5     of 2000, a listing agreement was entered into with

6     Colliers Monroe Friedlander for the sale of the Diamond

7     Head Beach Hotel.   Subsequently, around August, a

8     listing agreement was entered into with that same firm,

9     Colliers Monroe Friedlander, for the sale of the Kiahuna

10    Golf Club and the Pukulani Country Club.   And then in

11    August, we were exploring in-house the idea of exploring

12    with Colliers Monroe Friedlander the possibility of

13    marketing -- of selling the Ocean Hotel Resort for us.

14         MR. MELCHINGER:   I guess why I asked the

15    Translator for the clarification, because I thought I

16    heard the Deponent maybe make a further clarification.

17    Maybe is that missing in your translation?

18         THE INTERPRETER:   At the very beginning he had

19    a false start that I omitted.   It was a very minor false

20    start and then he had a very logically, what seemed to

21    be a cohesive answer, so I omitted the false start.   Do

22    you want for the record, I can tell you.   It doesn't add

23    much contextually.

24         MR. MELCHINGER:    That's okay.   I think that's

25    24.

***ATTORNEY-CLIENT PRIVILEGE***          126

1              (Exhibit 24 marked for identification.)

2    BY MR. MELCHINGER:

3         Q.    Showing you what's been marked Exhibit 24 to

4    your deposition.   When you've had a chance to look at

5    it, if you can tell me whether you recognize that or

6    not.

7         A.    I do recognize this document.

8         Q.    This is the listing agreement with Colliers

9    that you just mentioned, I think, dated around August of

10   2000; is that right?

11        A.    Yes.

12        Q.    And on page 10, is that your signature twice

13   there?

14        A.    Yes.

15        Q.    So you're signing on behalf of Sports Shinko

16   Kauai and Sports Shinko Pukulani; is that right?

17        A.    Yes.

18        Q.    And these are your initials at the bottom of

19   each page or on the top part, seller's initials; is that

20   right?

21        A.    Yes.

22        Q.    On page 13 of 14, there's a listed price for

23   the Kiahuna Country Club and the Pukulani Country Club;

24   is that right?

25        A.    Yes.

1      Q.    And the listed price for Kiahuna is 42 and for

2    Pukulani is 29.  Do you recall if this was the actual

3    listed price that Colliers eventually used?  At least in

4    August of 2000.

5      A.    Yes.  These are the prices at that point in

6    time.

7      Q.    What were your instructions as to marketing and

8    selling these properties, Kiahuna, Pukulani, and the

9    Ocean Resort Hotel?  At around this time when the

10   exclusive listing agreements were entered.

11     A.    In terms of the instructions that I received

12   from the president, I was told to report any and all

13   offers that were received from Colliers.  I was also

14   asked by Colliers to put together the materials and

15   documents that they would need to sell the property and

16   to provide those materials to them.

17     Q.    The latter you mentioned would be the due

18   diligence documents; is that right?

19     A.    Right.

20     Q.    Was there any other instruction at that time?

21     A.    I don't recall.

22     Q.    For example, did anyone tell you how fast you

23   should sell them or what to look for in offers or

24   anything else about what to report to the president, for

25   example, anything like that?

1    A.    No.  However, the president told me that the

2    sales were to be conducted confidentially.  That we were

3    not going to have Colliers market the properties in any

4    extravagant fashion in the newspapers, but rather that

5    the president preferred that the properties be marketed

6    confidentially, and I was told to strictly comply with

7    that.

8    Q.    At some point did actually Doug Pothul or

9    somebody at Colliers actually make that information

10   public, that these properties were for sale?

11   A.    I don't believe that that was something that

12   was made -- excuse me, released by Sports Shinko, but

13   rather it was a news article that was released by a golf

14   course that had entered into a listing agreement on the

15   island of Oahu.  It wasn't Sports Shinko.

16   Q.    Did you or did Colliers, I should say, start to

17   bring in offers for the properties that had been listed?

18         MR. KOMEIJI:  Let me just -- I know I read your

19   papers when we had this idea of how far the deposition

20   was gonna go in terms of the relevance or likely to lead

21   to discovery of admissible evidence as it related to

22   this case.  I'm just gonna pose an objection that I

23   think this is going beyond the scope of this particular

24   case and I don't know how far you're gonna go with the

25   question, but I just put in the objection and

***ATTORNEY-CLIENT PRIVILEGE***          129

1    incorporate previously in my memo.

2              MR. MELCHINGER:  No.  I understand.  Okay.

3              MR. KOMEIJI:  Just so he understands.  I'm not

4    instructing him not to answer.  I'm just putting in that

5    objection.

6              MR. MELCHINGER:  I think it is related, but I

7    can't do it all in one question.  We'll get there.  Did

8    you translate the question?

9              THE INTERPRETER:  I did.

10   BY MR. MELCHINGER:

11       Q.    All right.  You can answer.

12       A.    They did bring in offers, however, Colliers

13   first embarked on due diligence with regard to the

14   development sites at Pukulani and Kiahuna and it was

15   after they conducted their due diligence that they began

16   to bring in offers.

17       Q.    You testified earlier when you were talking

18   about Diamond Head Beach Hotel and the RMS

19   termination -- RMS management agreement termination fees

20   that you had some concern about paying the termination

21   fees for the management agreement with Diamond Head

22   Beach Hotel because Diamond Head Beach Hotel had been

23   listed and it was going to be sold very soon; is that

24   right?  Is that an accurate statement?

25       A.    Yes.

***ATTORNEY-CLIENT PRIVILEGE***          96

1            IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

2                       STATE OF HAWAII

3       ------------------------------------------

4    SPORTS SHINKO (USA) CO., LTD., a Delaware

5    Corporation; SPORTS SHINKO (MILILANI)

6    CO., LTD., a Hawaii corporation, et al.,

7            Plaintiff,

8        vs.            Case No. 02-1-2766-11 (EEH)

9    RESORT MANAGEMENT SERVICES

10   (HAWAII), INC., a Hawaii corporation,

11   YASUO NISHIDA, SATOSHI KINOSHITA, et al.

12           Defendants.

13      ------------------------------------------

14

15           DEPOSITION OF SATOSHI KINOSHITA

16                     (Volume II)

17

18   Taken on behalf of the Plaintiff at Alston Hunt Floyd &

19   Ing, 1001 Bishop St., ASB Tower, 18th Floor, Honolulu,

20   Hawaii 96813, commencing at 9:04 a.m., Wednesday, April

21   20, 2005, pursuant to Notice.

22

23   BEFORE:   BARBARA ACOBA, CSR No. 412, RPR

24             Notary Public, State of Hawaii

25

***ATTORNEY-CLIENT PRIVILEGE***                    97

```
 1    APPEARANCES:

 2    For Plaintiff:        GLENN MELCHINGER, Esq.

 3                          ALSTON HUNT FLOYD & ING

 4                          ASB Tower

 5                          1001 Bishop St., 18th Floor

 6                          Honolulu, Hawaii 96813

 7

 8    For Defendant SATOSHI KINOSHITA:

 9                          JOHN KOMEIJI, Esq.

10                          WATANABE ING KAWASHIMA & KOMEIJI

11                          First Hawaiian Center

12                          999 Bishop St., 23rd Floor

13                          Honolulu, Hawaii 96813

14

15

16    Also Present:         STEVEN SILVER - Interpreter

17

18

19

20

21

22

23

24

25
```

***ATTORNEY-CLIENT PRIVILEGE***                195

1                 C E R T I F I C A T E

2   STATE OF HAWAII                    )

3   CITY AND COUNTY OF HONOLULU      )

4          I, BARBARA ACOBA, Certified Shorthand

5   Reporter and Notary Public, State of Hawaii, do

6   hereby certify:

7          That on Wednesday, April 20, 2005, at

8   9:04 a.m., appeared before me SATOSHI KINOSHITA, the

9   witness whose deposition is contained herein; that

10  prior to being examined he was by me duly sworn;

11         That the deposition was taken down by me

12  in machine shorthand and was thereafter reduced to

13  typewriting under my supervision; that the foregoing

14  represents, to the best of my ability, a true and

15  correct transcript of the proceedings had in the

16  foregoing matter.

17         I further certify that I am not an attorney

18  for any of the parties hereto, nor in any way concerned

19  with the cause.

20         Dated this 30th day of April, 2005,

21  in Honolulu, Hawaii.

22                    _____

23                    BARBARA ACOBA, CSR NO. 412

24                    Notary Public, State of Hawaii

25                    My Commission Exp: 10-22-2008

RALPH ROSENBERG COURT REPORTERS
Honolulu, Hawaii   (808) 524-2090