IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>QK HOTEL, LLC, a Hawaii limited liability company, et al.,<br><br>    Defendants,<br>  and<br>FRANKLIN K. MUKAI,<br><br>    Third-Party Plaintiff,<br><br>  vs.<br><br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al.<br><br>    Third Party Defendants.<br>AND CONSOLIDATED CASES | CV 04-00124 ACK-BMK<br>CV 04-00125 ACK-BMK<br>CV 04-00126 ACK-BMK<br>CV 04-00127 ACK-BMK<br>CV 04-00128 ACK-BMK<br><br>CONSOLIDATED CASES<br><br>DECLARATION OF TOD Z. TANAKA |

<u>DECLARATION OF TOD Z. TANAKA</u>

Pursuant to 28 U.S.C.§1746, TOD Z. TANAKA states as follows:

1.    I am an attorney licensed to practice before this Court.

2.    I represented KG Holdings, LLC in connection with the acquisition of all of the Hawaii assets of the Sports Shinko Hawaii based subsidiaries ("SS Hawaii companies") in 2002. I was directly involved in negotiating the terms of the Purchase and Sale Agreement between SS Hawaii companies and KG Holdings, LLC dated January 15, 2002 ("PSA").

3. Under the terms of the PSA, KG Holdings, LLC agreed to purchase, and the SS Hawaii companies agreed to sell, all of the Hawaii assets of the SS Hawaii companies. The assets to be transferred as part of the transaction (the "Property") included three golf courses, two hotels, certain development lands adjacent to two of the golf courses, the stock of Pukalani STP Co., Ltd., a public utility company which owns and operates a sewage treatment plant adjacent to the Pukalani golf course, the stock of a licensed motor carrier that operated a passenger van, and certain related personal property. PSA§1.1.

4. A single purchase price was agreed upon for the purchase and sale of the Property. PSA§2.1. There was no breakdown of the purchase price in the PSA between the assets to be purchased, because all of the assets comprising the Property were to be purchased in bulk as part of the same transaction in exchange for a lump sum purchase price.

5. The closing of the transaction was conditioned on all of the "Property" (defined in Section 1.1 of the PSA) being purchased and sold as part of the same transaction. The PSA did not allow the purchaser or the sellers to exclude any of the assets to be sold from the transaction. PSA§6.4(a). Under the PSA, KG Holdings, LLC was obligated to purchase the stock of Pukalani STP Co., Ltd. PSA§1.1. The PSA did not allow KG Holdings, LLC to exclude the stock of Pukalani STP Co., Ltd. from the sale.

6. After the PSA was signed, the parties determined that the purchase price must be allocated between the various real estate assets included as part of the sale, in order to determine the conveyance taxes payable in connection with the transfer of these assets. Recordation of the deeds and assignments conveying these assets could not be completed without filing an accompanying conveyance tax certificate and paying the applicable conveyance tax. HRS Ch. 247. The parties agreed upon an allocation of the purchase price between the various real estate assets, stock and personal property by letter agreement dated January 24, 2002. This allocation was solely for the purpose of determining the conveyance taxes due with respect to the transfer of the real estate assets.

7. The properties were transferred by separate deeds and assignment of lease documents, in part due to the need to allocate the purchase price between each of the parcels of land being transferred. For conveyance tax purposes, the purchase price had to be allocated between each of the parcels of land being transferred. Having separate deeds and assignments made this allocation process much simpler and facilitated the processing of the conveyance tax certificates by the Bureau of Conveyances of the State of Hawaii.

8. In addition, the fee properties were owned by separate SS Hawaii companies, and thus it was appropriate to have a separate deed executed by each seller. The leasehold properties were leased from different lessors, and the consent

of each lessor was required in order to assign each lease. Separating the assignments of lease enabled the parties to present a single assignment of lease to the applicable lessor. Additionally, KG elected to take title to the various properties in separate subsidiaries, in order to keep the operations of each property separate from the others. Thus, separate instruments were required to transfer the various assets to the appropriate subsidiary.

9. No conveyance tax was paid in connection with the transfer of the stock of Pukalani STP Co., Ltd. The transfer was structured as a stock transfer because the company was registered with the Hawaii Public Utilities Commission as a public utility, and the registration was not transferable. The conveyance tax does not apply to stock sales. HRS§247-1. Nominal consideration in the amount of $10 was allocated to the stock of Pukalani STP Co., Ltd. because it was viewed as a liability rather than an asset.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Honolulu, Hawaii on June 16, 2006.

/s/ Tod Z. Tanaka
TOD Z. TANAKA