IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br><br>      Plaintiff,<br><br>  vs.<br><br>QK HOTEL, LLC, a Hawaii limited liability company, et al.,<br><br>      Defendants,<br><br>  and<br><br>FRANKLIN K. MUKAI,<br><br>      Third-Party Plaintiff,<br><br>  vs.<br><br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al.<br><br>AND CONSOLIDATED CASES | CV 04-00124 ACK-BMK<br>CV 04-00125 ACK-BMK<br>CV 04-00126 ACK-BMK<br>CV 04-00127 ACK-BMK<br>CV 04-00128 ACK-BMK<br><br>CONSOLIDATED CASES<br><br>MEMORANDUM OF LAW |

## **MEMORANDUM OF LAW**

Expungement of Plaintiff Sports Shinko (USA) Co., Ltd.'s ("Sports Shinko" or "Plaintiff") Notice of Pendency of Action ("*lis pendens*") is particularly important now because the Defendants[1] wish to pledge the properties which are subject to the *lis pendens* as security for a loan for necessary reconstruction and repairs of the Pukalani Sewage Treatment Plant (the "Pukalani STP"), situated upon property owned by a subsidiary of PGC, LLC, the stock of which was

---

[1] "Defendants" refers to Pukalani Golf Club, LLC ("PGC, LLC"), KG Maui Development, LLC ("KG Development"), and KG Holdings, LLC ("KG Holdings").

purchased in the package of real property and other assets acquired from Plaintiff's subsidiary. The reconstruction of the Pukalani STP is urgently needed by the Defendants, as well as the surrounding community that relies upon the sewage treatment plant.

## I.    INTRODUCTION

The subject properties at issue in this case were purchased from subsidiaries of the Plaintiff as part of a bulk sale. The Plaintiff, which alleges it is also a creditor of its own subsidiaries, has asserted that the Defendants paid too little for the subject properties, and for that reason the sale of the properties to the Defendants should be avoided under Haw. Rev. Stat. §§ 651C-4 and 5(a) as a fraudulent transfer, and that rescission of the sale should be ordered as an additional remedy for the underlying claims. Haw. Rev. Stat. §§ 651C-4 and 5(a), however, do not provide a basis for a *lis pendens*, but instead only a claim for a monetary judgment, and a request for the remedy of "rescission," a remedy and not a claim by itself, adds no more to the Plaintiff's claim for damages.[2]

---

[2]    As will be noted below, the "rescission" claim is also defective for the absence of an indispensable party.

## II.    BACKGROUND

### A.    Defendants' Purchase of Subject Properties

In early 2002, the Defendants and their affiliates purchased a number of parcels of real property and affiliated assets from subsidiaries of the Plaintiff as part of a bulk sale for $22 million.  The real properties included several neighboring parcels on the Island of Maui (the "Pukalani Properties").  See attached Declaration of Wayne Tanigawa, ¶ 3 ("Tanigawa decl.").  With respect to the Pukalani Properties, the Defendants purchased (i) a golf course, the Pukalani Golf Club, which became an asset of PGC, LLC, and (ii) neighboring parcels suitable for development, which became assets of KG Development.  The purchase of assets also included the purchase of all of the stock of Pukalani STP Co., Ltd., the entity owning a neighboring property upon which the Plaintiff's predecessor had developed a sewage treatment plant (the Pukalani STP).  Tanigawa decl. ¶ 4.

As a condition of the sale, the Plaintiff's subsidiaries had required KG Holdings, LLC or one if its subsidiaries to acquire the stock of Pukalani STP Co., Ltd.  Tanigawa decl. ¶ 5. The golf course parcel and development parcels are beneficiaries of the Pukalani STP, in that (i) the golf course is irrigated in part by effluent from the Pukalani STP, and (ii) the development parcels will require approval from Pukalani STP Co., Ltd. so that sewage from the developed parcels can be treated at the Pukalani STP.  Id.  In any event, the acquisition of the

Pukalani STP was a condition of the sale for the sellers because the sellers did not want the liability of a sewage treatment plant, if they no longer owned the neighboring properties which were the beneficiaries of the sewage treatment plant. Id.

### B.    The Pukalani STP

At the time of the bulk sale, the Pukalani STP was at the end of its useful life.[3]  While PGC, LLC has managed to continue to use the existing facility to date, its ability to extend the life of the facility any further is coming to an end, and the facility must be replaced.  The Defendants have been advised that it would cost approximately $8.74 million to rebuild the Pukalani STP.  Tanigawa decl. ¶ 6. The Defendants understand that the rebuilt sewage treatment plant would also benefit certain other nearby parcels which belong to other owners.  The owners of those parcels may contribute up to $4 million in the aggregate to rebuild the Pukalani STP.  If they do, the Defendants will still have to bear the burden of the remaining $5 million.  Tanigawa decl. ¶ 7.

The Pukalani STP would ordinarily borrow the funds for such a transaction. At least one lender, however, has advised the Defendants that it does not wish to hold as collateral property improved only with a sewage treatment plant.

---

[3]    This was apparently known to the Plaintiffs, but was not disclosed to the Defendants, and the Defendants reserve their claim arising from this failure of disclosure.

Tanigawa decl. ¶ 8.  Hence, PGC, LLC and KG Development, which own the properties that would be benefited by the plant, ordinarily will have to furnish mortgages upon their respective properties to collateralize the loan.  However, as evidenced by the letter from Bank of Hawaii to the Defendants dated June 16, 2006 (exhibit A hereto), lenders conventionally do not wish to furnish loans secured by properties subject to a *lis pendens*.[4]  Tanigawa decl. ¶9.

**C.    The *Lis Pendens***

On February 20, 2004, Plaintiff commenced an action against the Defendants by filing an initial Complaint (the "Initial Complaint"), in which the Plaintiff asserted claims for an alleged fraudulent transfer, pursuant to sections in Hawaii's Uniform Fraudulent Transfer Act (codified in Haw. Rev. Stat. Ch. 651C).[5]  In the Initial Complaint, Plaintiff claimed that Defendants paid too little for the properties which were the subject of the bulk sale.  Based upon the fraudulent transfer claim in the Initial Complaint, on February 20, 2004, the

---

[4]    The Defendants will continue in their efforts to seek financing from lenders without a pledge of the properties, or with a pledge subject to the *lis pendens*, but at this juncture have not been able to secure a loan commitment upon such terms. Tanigawa decl. ¶ 10.

[5]    In 1985, Hawaii adopted the 1984 Uniform Fraudulent Transfer Act, without substantial modification, which is set forth in Haw. Rev. Stat. Ch. 651C ("HUFTA").  HUFTA declares certain transfers that meet the elements of Haw. Rev. Stat. §§ 651C-4 and -5 to be avoidable.

Plaintiff filed a Notice of *Lis Pendens*[6] against a number of properties, including the Pukalani Properties.

The Initial Complaint was amended twice. On June 14, 2004, the Plaintiff filed the First Amended Complaint and on July 12, 2005 (over one year after the Initial Complaint and Notice of *Lis Pendens* were filed), the Plaintiff filed the Second Amended Complaint (the "Second Amended Complaint"). In the Second Amended Complaint, the Plaintiff added Franklin D. Mukai ("Mukai") as a defendant, alleging that Mukai "assisted and advised" the sellers in the marketing and selling of the Pukalani Properties, breached his fiduciary duties to the Plaintiff or its subsidiaries, and accordingly is liable, among other things, for aiding and abetting others in the alleged violation of Haw. Rev. Stat. Ch. 651C, thereby expanding the Plaintiff's fraudulent transfer claim to include Mukai, as well. The Second Amended Complaint also added a "count" against PGC, LLC and KG Development for "rescission" of the sale of the subject properties.

By letter dated April 21, 2006, Defendants informed Plaintiff of the repairs and reconstruction needed at the Pukalani STP and requested that the *lis pendens*

---

[6]     The Plaintiff's Notice of Pendency of Action with respect to the Pukalani Properties, filed on February 20, 2004, was recorded in the Bureau of Conveyances of the State of Hawaii, on February 23, 2004, as Document No. 2004-036087, and also recorded in the Office of the Assistant Registrar of the Land Court of the State of Hawaii, on February 23, 2004, as Document No. 3073328.

be released so that financing for the reconstruction and renovation of the Pukalani STP could be obtained.  <u>See</u> Exhibit B.  The Plaintiff, however, refused to release the *lis pendens,* contending that Defendants Pukalani Golf Club and/or KG Development should not incur any liability to underwrite the Pukalani STP, even if repairs were desperately needed.[7]  <u>See</u> Exhibit C.

Because Plaintiff refuses voluntarily to release its *lis pendens* against the Pukalani Properties, the Defendants now ask the Court to expunge Plaintiff's *lis pendens*.

## III.  <u>LEGAL ARGUMENT</u>

Plaintiff's *lis pendens* against the Pukalani Properties must be expunged because (i) Plaintiff's claims are claims for economic or money damages, and not claims to ownership or an interest in the Pukalani Properties, and (ii) the controlling case, <u>S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club</u>, 75 Haw. 480, 866 P.2d 951 (1994), declares that a *lis pendens* may <u>not</u> be utilized by a plaintiff merely because it wishes to have a collateral interest to secure collection of a judgment it hopes to recover.

---

[7]    Plaintiff was only agreeable to lifting its *lis pendens* against the Pukalani Golf Club Property, so that repairs to <u>that particular property</u> could be made.  <u>See</u> Exhibit C.

A.    The *Lis Pendens* Should Be Discharged Because the Plaintiff's Claims Do Not Affect the Subject Properties

The *lis pendens* must be discharged because the Plaintiff's claims do not assert title to or an interest in the Pukalani Properties.  Rather, the Plaintiff's claims are claims for economic or money damages under HUFTA, which are not properly the subject of a *lis pendens*.

In the Initial Complaint (upon which the *lis pendens* is based), the Plaintiff asserted claims, pursuant to HUFTA, based on an alleged fraudulent transfer. These claims are claims for money damages only, and do not create an interest in the Pukalani Properties.  "[C]ourts generally recognize that lis pendens is not an appropriate instrument for use in promoting recoveries in actions for personal or money judgments.  Thus, where the primary purpose of a lawsuit is to recover money damages and the action does not directly affect the title to or the right of possession of real property, the filing of a notice of lis pendens is inappropriate." See 51 Am Jur 2d *Lis Pendens* §28 (2005); see also S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club, discussed below, and Cole, Schotz, Bernstein, Meisel & Forman v. Owens, 679 A.2d 155, 159 (N.J. Super. Ct. 1996) ("a lis pendens should be discharged if the plaintiff has no right to a lien or a claim affecting the realty in question but only some different claim or right against the defendant").

As explained below, the *lis pendens* is based on the Plaintiff's claims asserted under HUFTA. These claims are limited to money damages, and do not create a right to, or interest, in the Pukalani Properties.

### B. Claims Under Haw. Rev. Stat. Ch. 651C are Limited to Money Damages, and Thus, Not Properly the Subject of a *Lis Pendens*

HUFTA deems certain transfers that meet the elements of Haw. Rev. Stat. §§ 651C-4 and -5 to be "fraudulent."[8] Haw. Rev. Stat. § 651C-7(a)(1) then provides that, where such a fraudulent transfer has been made, the creditor may obtain "[a]voidance of the transfer or obligation, to the extent necessary to satisfy the creditor's claim. . . ." The consequences of the "avoidance" of a fraudulent transfer are set forth in Haw. Rev. Stat. § 651C-8, which, with a critical modification, was derived from, and tracks, section 550 of the Bankruptcy Code. See Uniform Fraudulent Transfer Act § 8 cmt. (2) (1984) ("[s]ubsection (b) is derived from § 550(a) of the Bankruptcy Code").

---

[8]     Under Haw. Rev. Stat. § 651C-4(a), a transfer is fraudulent when the transfer is made (i) with "actual intent to hinder, delay, or defraud any creditor of the debtor" or (ii) "[w]ithout receiving reasonably equivalent value in exchange for the transfer or obligation" and the debtor's remaining assets were unreasonably small in relation to the business or transaction, or the debtor should have known that it would incur debts beyond its ability to pay.

Under Haw. Rev. Stat. § 651C-5(a), a transfer is fraudulent as to a present creditor if the transfer was made "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor becomes insolvent as a result of the transfer or obligation".

Haw. Rev. Stat. § 651C-8 (b) provides, in part, as follows:

> (b)    Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under section 651C-7(a)(1), <u>the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less</u>.

That this section is intended to afford a claimant only a money judgment and <u>not</u> an interest in the property which may have been transferred is apparent when the provision is compared to the provisions of the Bankruptcy Code from which it was derived.

Section 550(a) of the Bankruptcy Code (11 U.S.C. §550) sets forth the remedies available to a bankruptcy trustee (or debtor-in-possession) when a transfer is avoided under the Bankruptcy Code.  Section 550(a) provides, in relevant part, as follows:

> a)    Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, <u>the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property</u>, from–

Hence, a critical variation exists between Section 8 of HUFTA and Section 550 of the Bankruptcy Code.  While under Section 550(a), the bankruptcy trustee (or debtor in possession) recovers either the subject property fraudulently conveyed <u>or</u> the value of such property, <u>under Section 8(b) of HUFTA, the claimant only recovers a money judgment</u>, and does not recover the subject

property.  <u>See</u> Uniform Fraudulent Transfer Act § 8 cmt. (2) (1984) (the "value of

the asset transferred is limited to the value of the levyable interest on the transferor,

exclusive of any interest encumbered by a valid lien").  That is, the drafters of the

uniform act <u>deleted</u> the language of the Bankruptcy Code by which the "property"

would be recovered.

Because a plaintiff under HUFTA recovers only a money judgment, Section

651C-7(a)(2) and –7(a)(3) direct a complaining creditor to alternative prejudgment

remedies that may be available to one who meets respective tests for such

remedies.[9]  Further, Section 7(b) allows the creditor, if the Court so orders, a post-

---

[9]    Section 7 of HUFTA, codified at Haw. Rev. Stat. § 651C-7, provides as
follows:

(a)  In any action for relief against a transfer or obligation under
this chapter, a creditor, subject to the limitations provided in section
651C-8, may obtain:

(1)  Avoidance of the transfer or obligation to the extent
necessary to satisfy the creditor's claim;

(2)  An attachment or other provisional remedy against the asset
transferred or other property of the transferee in accordance with the
procedure prescribed by chapter 651;

(3) Subject to applicable principles of equity and in accordance
with applicable civil rules of procedure:

(A) An injunction against further disposition by the debtor
or a transferee, or both, of the asset transferred or of other property;

(B) Appointment of a receiver to take charge of the asset
transferred or of other property of the transferee; or

(C) Any other relief the circumstances may require.

11

judgment remedy in execution.[10]  However, none of these provisions authorizes the

*lis pendens* the Plaintiff has filed in this case.

Accordingly, it is clear that when section 8(b) was drafted, the drafters

intended that recovery for fraudulent transfers under the uniform act would be

limited to money judgments, and not recovery of the subject property.  Otherwise,

the drafters would have adopted Bankruptcy Code § 550 in its entirety when

drafting that section.

> C.    **A *Lis Pendens* Cannot be Utilized by Plaintiff Merely Because It Wishes to Have a Collateral Interest to Secure Collection of a Judgment it Hopes to Recover, When the Plaintiff Does Not <u>Assert a Claim to Title or Possession of the Subject Property</u>**

A plaintiff cannot utilize a *lis pendens* merely because it wishes to have a

collateral interest to secure collection of a money judgment it hopes to recover.

> 1.    **The Purpose of a *Lis Pendens* Is To Provide Notice of Pending Litigation and Not to Make Plaintiffs <u>Secured Creditors</u>**

The *lis pendens* statute, Haw. Rev. Stat. § 634-51, provides as follows:

> <u>In any action concerning real property or affecting the title or the right of possession of real property</u>, the plaintiff, at the time of filing the complaint, and any other party at the time of filing a pleading in

---

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor may, if the court so orders, levy execution on the asset transferred or its proceeds.

[10]    By contrast, Bankruptcy Code § 550, which does give the complaining trustee a right to recover "the property", does not direct the trustee to these alternate remedies.

which affirmative relief is claimed, or at any time afterwards, may record in the bureau of conveyances a notice of the pendency of the action, containing the names or designations of the parties, as set out in the summons or pleading, the object of the action or claim for affirmative relief, and a description of the property affected thereby. From and after the time of recording the notice, a person who becomes a purchaser or incumbrancer of the property affected shall be deemed to have constructive notice of the pendency of the action and be bound by any judgment entered therein if the person claims through a party to the action; provided that in the case of registered land, section 501-151 and sections 501-241 to 501-248 shall govern. (Emphasis added.)

The Hawaii Supreme Court in S. Utsunomiya Enterprises, Inc. has rendered the controlling interpretation of this statute in this jurisdiction. In that case, the Hawaii Supreme Court held that the "purpose of the lis pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors nor to provide Plaintiffs with additional leverage for negotiations." Utsunomiya, 75 Haw. at 511-12, 866 P.2d at 966-67.

In Utsunomiya, Utsunomiya signed a letter of intent to purchase 156 acres from Moomuku for $11,000,000. The dispute arose regarding the $200,000 deposit, which Moomuku claimed was non-refundable and given in exchange for the option to proceed with the purchase of the 156 acres after a 14-day due diligence period. Utsunomiya claimed that during the 14-day due diligence period it had the opportunity to investigate breaks in the record chain of title, and that the deposit was conditioned on Moomuku being able to convey free and clear title.

Upon discovering breaks in the property's chain of title, Utsunomiya filed a complaint seeking recovery of its $200,000 deposit, in addition to punitive damages. Utsunomiya also filed a notice of *lis pendens* against the property alleging that the deposit was paid toward the purchase of the property. Based upon Utsunomiya's rescission of its letter of intent, Moomuku negotiated with JGP for the purchase of the property for $8,000,000. At some point JGP learned of Utsunomiya's *lis pendens*, and attempted to condition its purchase upon the expungement of the *lis pendens*. Moomuku later filed a motion to expunge Utsunomiya's *lis pendens*, while JGP had the purchase funds deposited in escrow. JGP later intervened in the expungement action because in its view the *lis pendens* was an encumbrance against the property.

The court determined that Utsunomiya's *lis pendens* it was invalid because Utsunomiya did not directly challenge Moomuku's right to title or possession of the property per se. Instead, Utsunomiya made a claim against Moomuku's equity interest in the property to the extent of its $200,000 deposit. In concluding that the *lis pendens* was invalid the Court stated:

> It must be borne in mind that the true purpose of the lis pendens statute is to provide notice of pending litigation and <u>not to make plaintiffs secured creditors of defendant</u> nor to provide plaintiffs with additional leverage for negotiating purposes.

<u>Id</u>. 75 Haw. at 511-12, 866 P.2d at 966-67 (emphasis added).

14

Accordingly, the controlling case in this jurisdiction provides for a limited purpose for a *lis pendens* — namely notification to potential buyers or creditors of a pending litigation asserting a right of title or possession of real property.  As explained in further detail below, because the Plaintiff seeks a claim for money damages and not title to the subject properties, the Plaintiff's *lis pendens* does not serve the limited purpose identified in <u>Utsunomiya</u>.  Rather, the Plaintiff appears to be using the *lis pendens* for the purpose, expressly prohibited by <u>Utsunomiya</u>, of seeking to secure its claim or obtain additional leverage against the Defendants.

> **2.    A Plaintiff Must Assert a Direct Claim to Title or a Right of Possession in the Subject Property in Order To Be Entitled to a *Lis Pendens***

In order to obtain a *lis pendens*, a plaintiff must assert a direct claim to title or a right to possession of the subject property.  In <u>Utsunomiya</u>, the Hawaii Supreme Court held "we find more persuasive the authority that holds that the *lis pendens* statute must be strictly construed and that the application of *lis pendens* should be limited to actions *directly* seeking title to obtain title to or possession of real property." <u>Id</u>. 75 Haw. at 510; 966 P.2d at 966.  The Hawaii Supreme Court also recognized that a *lis pendens* impairs the owner's use of the property, without a determination of a party's claim by a judicial officer, and recognizes that the power to assert a *lis pendens*, therefore, needs to be restricted rather than broadened.  <u>Id</u>. 75 Haw. at 509, 966 P.2d at 965.

15

In recognizing "the real potential for abuse of lis pendens", the Hawaii Supreme Court agreed with a California court, that:

> [T]he practical effect of a recorded lis pendens is to render a defendant's property unmarketable and unsuitable as security for a loan. The financial pressure exerted on the property owner may be considerable forcing him to settle not due to the merits of the suit but to rid himself of the cloud upon his title. The potential for abuse is obvious.

Id. 75 Haw. at 512, 966 P.2d at 967, citing La Paglia v. Superior Court, 215 Cal.App. 3d 1322 (1989).

For this reason, the Hawaii Supreme Court restricted the application of the doctrine of *lis pendens* to actions *directly* seeking to establish title to or possession of real property. Accordingly, under Hawaii law, the Plaintiff's fraudulent transfer claims do not support the filing of a *lis pendens*, since the Plaintiff's action does not directly seek title to or possession of the subject properties.

More recently, in Knauer v. Foote, 101 Hawaii 81. 63 P.3d 389 (2003), the Hawaii Supreme Court confirmed its prior holding in Utsunomiya. In that case, the Hawaii Supreme Court relied upon the reasoning in Utsunomiya and determined that because the plaintiff's claim did not allege title to, or a right of possession of, the real property at issue in the case, the plaintiff's *lis pendens* was invalid and was properly expunged by the circuit court. Plaintiff's complaint alleged that he was an apartment owner that also served on the board of directors of the apartment's association. In these capacities, and derivatively on behalf of all

the apartment owners, the plaintiff alleged that the association and other defendants, including another member of the board, had negotiated with the leaseholder owner and association to convey a condominium for a price less than the association's true (and original) purchase price.  Although plaintiff's prayer for relief did not claim that he should have title to the property, plaintiff filed a notice of pendency of action.  Based on the nature of the plaintiff's complaint, the court held that the plaintiff's claims did not "fall within the narrow confines of the *lis pendens* rule, and thus the circuit court properly expunged the lis pendens."  Id. 101 Hawaii at 89, 63 P.3d at 393.

In determining the validity of a *lis pendens*, the court looks to the nature of claims made in the complaint. Knauer, 101 Hawaii at 84. 93 P.3d at 392.  In the instant case, the Plaintiff's initial complaint only set forth a fraudulent transfer claim.  As discussed above, remedies for a fraudulent transfer claim are limited to money damages and not recovery of the subject property.

Accordingly, under Hawaii case law, and because the claims asserted by the Plaintiff are claims for money damages, and do not affect a claim or interest in the subject properties, the Plaintiff's *lis pendens* is not permitted, and should be expunged.

**D.    Neither the Plaintiff's Rescission Claim, Nor Any Other Claim for Equitable Relief, Entitles the Plaintiff to the *Lis Pendens***

In the Second Amended Complaint, Plaintiff alleges a count for rescission of the sale of the properties.  Neither this claim for rescission, nor any other claim for equitable relief, however, gives the Plaintiff a greater right, or otherwise entitle the Plaintiff, to the *lis pendens*.

"Rescission is only a remedy, not a cause of action."  Zola v. Gordon, 685 F. Supp. 354, 374 (S.D.N.Y. 1988).  It is an equitable remedy that is controlled by equitable principles.  See 12A C.J.S. Cancellation of Instruments §9 (2005); see also AIG Hawaii Ins. Co., Inc. v. Bateman, 82 Hawaii 453, 456, 923 P.2d 325 (1996).  "Rescission has the effect of voiding a contract from its inception."  Dow Chemical Co. v. United States, 226 F.3d 1334, 1345 (2000).  It is "a harsh remedy which is not available as a matter of right and which is only available in limited circumstances."  12A C.J.S. Cancellation of Instruments § 3 (2005); see also Dow Chemical Co., 226 F.3d at 1345 (rescission is an "equitable doctrine which is grounded on mutual mistake, fraud, or illegality in the formation of a contract").

Because rescission is essentially an equitable remedy, it will not ordinarily be invoked where money damages will adequately compensate a party to the contract.  Dow Chemical, 226 F. 3d at 1345; C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc., 419 F. Supp. 2d 419, 435-36 (S.D.N.Y. 2005) (equity has

no place where money damages will suffice).  "Where the plaintiff can fully reap the benefit of its bargain through an award of legal damages, there is no call to invoke the equitable powers of the court and rescind the contract." C3 Media & Marketing Group, 419 F. Supp. 2d at 436.

Further, and more generally, the Hawaii Supreme Court, like the courts in other jurisdictions, holds that an equitable remedy will not be available when there is an adequate remedy in damages.  See Beneficial Hawaii, Inc. v. Kida, 96 Hawaii 289, 30 P.3d 895 (2001) ("The general principle is that equity will not take jurisdiction when the complainant has a complete and adequate remedy at law.") As explained above, the Plaintiff could be fully compensated by the award of money damages, if the Court were to find that the Plaintiff's claims have merit and that the Defendants paid too little for the subject properties.  Accordingly, the equitable remedy of rescission of the subject transaction cannot be invoked in these circumstances to support a *lis pendens*.

Indeed, and in any event, the Court in Utsunomiya spoke to this issue as well, concluding that "allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages." Id., 75 Haw. at 511, 866 P.2d 966 (emphasis added).

For these reasons, neither the Plaintiff's asserted count for the equitable remedy of rescission, nor any other equitable claim Plaintiff may make, supports the Plaintiff's *lis pendens*.[11]

### E.    Even if the Transfer of the Pukalani Properties were Rescinded, the Defendants Would Still Be Entitled to an Interest in the Pukalani Properties Under Haw. Rev. Stat. § 651C-8(d)(1)

Even if the Court were to find that the Plaintiff's claims have merit, and that it is entitled to rescission of the transfer of the Pukalani Properties, the Defendants would still be entitled to a lien upon the Pukalani Properties under Haw. Rev. Stat. § 651C-8(d)(1).  That section provides in pertinent part that "[n]otwithstanding the

---

[11]    The Plaintiff's claim for rescission additionally cannot support a *lis pendens* because the claim itself is defective for lack of indispensable parties, i.e., the parties from which the Defendants received the challenged conveyances, and accordingly the claim should be dismissed.

> In an action for cancellation of an instrument all persons whose rights or interests will be affected by the cancellation are proper and necessary parties and indispensable, unless the rights of those before the court are completely separable from the rights of those absent.
>
> * * *
>
> When an indispensable party is not made a party to the action for cancellation, the court may not set aside or cancel the instrument at issue; the absence of a necessary party is a fatal defect.

13 Am. Jur. 2d Cancellation of Instruments § 48 (2005); see also Tewa Tesuque v. Morton, 360 F. Supp. 452 (D. N.M. 1973) ("[i]t is a fundamental principle of law that an instrument may not be cancelled by a Court unless the parties to the instrument are before the Court"); Emhart Corp. v. McLarty, 226 Ga. 621, 176 S.E. 2d 698 (1970) ("[i]n a case seeking the cancellation of a deed, all parties to such deed are necessary parties and the absence of such a material party is a fatal defect").  KG will address this in a future motion for partial dismissal.

voidability of a transfer or an obligation under this chapter, a good-faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to . . . a lien on or a right to retain any interest in the asset transferred." See Haw. Rev. Stat. § 651C-8(d)(1).

The Defendants paid $22 million for all of the properties purchased in the bulk sale, with a net paid for the properties in the amount of $12 million after subsequent adjustment by resale of one of the properties to another party, in a duplicate deal the sellers had made with that party. Accordingly, even if the transfer of the Pukalani Properties were rescinded, the Defendants would be entitled to a lien on the Pukalani Properties for the $12 million, together with amounts paid by the Defendants for additional improvements and investments in the properties.

The Plaintiff has noted that the Defendants allocated only $4 million of the total to the Pukalani Properties in conveyance tax filings, and the Plaintiff has argued that this administrative function should somehow dictate the value ascribed to the properties by the Defendants. The Defendants dispute this contention as well. However, even assuming Plaintiff's contention prevails, the Defendants would at least be entitled to a lien of $4 million on the Pukalani Properties, and

should be able to give their lender a first priority security interest in at least that amount.[12]

## IV.    CONCLUSION

For the foregoing reasons, the Defendants request that the Court expunge the *lis pendens*.

DATED: Honolulu, Hawaii, June 27, 2006.

/s/ Robert A. Marks
WARREN PRICE III
ROBERT A. MARKS

Attorneys for Defendants
KIAHUNA GOLF CLUB, LLC,
KG KAUAI DEVELOPMENT, LLC,
PUKALANI GOLF CLUB, LLC,
KG MAUI DEVELOPMENT, LLC,
MILILANI GOLF CLUB, LLC,
QK HOTEL, LLC, OR HOTEL, LLC,
AND KG HOLDINGS, LLC

---

[12]    It is not necessary for the Court to reach a decision as to the allocation of the purchase price for the Pukalani Properties since the Plaintiff is not entitled to a *lis pendens* on the properties for the reasons outlined above.