# PRICE OKAMOTO HIMENO & LUM

Attorneys at Law
A Law Corporation

Ocean View Center
707 Richards Street, Suite 728
Honolulu, Hawaii 96813
Telephone: (808) 538-1113
Fax: (808) 533-0549

Warren Price III
Kenneth T. Okamoto
Sharon R. Himeno
Bettina W. J. Lum
Terence S. Yamamoto
Robert M. Kohn

Counsel

Robert A. Marks
Rick J. Eichor
Susan C. Wilson

January 22, 2007

**VIA E-MAIL AND HAND DELIVERY**
Glenn T. Melchinger, Esq.
Alston Hunt Floyd & Ing
1001 Bishop Street
American Savings Tower, Suite 1800
Honolulu, Hawaii 96813

Re: Sports Shinko Co. Ltd. v. QK Hotel, LLC,
    D. Hawaii Cv. 04-00124 ACK-BMK and consolidated cases

Dear Glenn:

In my discussion with Jason Kim on January 17, I noted that there is a long list of pending items that your office needs to respond to. Jason suggested I prepare a list of those items. This is my effort to do so. As you will see from the enclosure, many of these items have been pending for 14 months or longer. Note that I have tried to make the enclosure comprehensive, but may have missed some items. Note too that a handful of items have been updated with minor new requests for information, as shown on the attachment.

Note that many of the items on pp. 4-9 of the attachment are addressed in the deposition notice served today. The SS-Japan deposition can be significantly shortened with your prompt response to these inquiries that have been pending for well over a year.

We would like your written status report on these items to avoid any misunderstanding. If you are unwilling to do that, we would like to meet and confer so we can get these long-pending matters resolved with the aid of the Court. Please let me know how you prefer to proceed.

We are aware of a handful of items we owe you a response to:

- Supplemental document production of KG documents, including particularly the documents KG acquired from the SS Hawaii Companies in 2002 (requested 12/27/06).

# EXHIBIT A

# EXHIBIT 8

Paul Alston, Esq.
Glenn T. Melchinger, Esq.
January 22, 2007
Page 2

- Proposed stipulation to amend third party counterclaims (requested 1/9/07)

- Detailed response to your 1/18/07 e-mail re Hayes privilege log (matter pending since KG first raised it 10/27/06).

We expect to have substantive responses to these matters to you shortly.

With respect to KG's third party complaint filed on January 22, 2007, note that we did not seek leave of court to file because, in our view, it is timely and authorized pursuant to Judge Kurren's order, embodied in Courtroom Manager Richlyn Young's e-mail dated November 17, 2005, the text of which is entered in the docket of each of the five cases on that date. If you have any questions or concerns about the Third Party Complaint, or if you need additional time to answer, please let me know.

It is also our understanding that we have an open extension of time to respond to your clients' third-party counterclaims filed on 1/13/06 (and amended third-party counterclaim filed 1/19/06 in CV No. 04-00128 ACK-BMK). We are not answering since you have advised that you intend to file amendments to these pleadings shortly. If your understanding is different, please advise.

Very truly yours,

PRICE OKAMOTO HIMENO & LUM

Robert A. Marks

Enclosure

c:   Client
     William Bordner, Esq./John Reyes-Burke, Esq.
     Simon Klevansky, Esq.

| Pretrial calendar | 10.12.06 & after | We need to report back to Judge Kurren if we can't agree on deadlines |
|---|---|---|
| Settlement of Maui case | 12.7.06 | Will you be sending a settlement proposal? Will you agree to participate in a settlement conference? |
| Tax returns | e-mail 4.26.06 | Provide South Wind's 2005 US tax return filed in connection with the Form 1042-S (257 1804), if such a return was filed |
| | | Provide any prior years' US tax returns for South Wind (and SS-Japan to the extent not already provided). |
| | new | Provide any tax returns filed by SW, SS-Japan or SS-USA not previously produced (last SW return was Japanese Corp tax return for YE 11/30/05) |
| Review of backup tapes from server @ QK Hotel | Arikawa e-mail 12.5.06 | Identify employees at pre-bankruptcy SS-Hawaii companies whose directories on back up tape may be excluded from pre-production review |
| Seiyuu audit reports of SS-J | 4.12.06 | Did Seiyuu Audit Corp ever respond to your request with copies of Seiyuu's audit report(s) of SS-Japan? I have 111 3350 (YE 12/31/00) but no others. |
| Loans that form the basis for plaintiffs status as creditor | 11.15.05 M&C | Which notes in Loan Purchase Agreement appendix are the basis for the creditor status sued upon? |
| Grant Thornton docs | 11.15.05 M&C and earlier | Have all GT documents that were reclassified as non-privileged been produced? |
| McCorriston priv log and supplemental production | 11.15.05 M&C and earlier | Will you produce the M4 documents that are no longer privileged + updated log of M4 documents? |
| SS-Japan by laws and articles of incorporation as of January 2002<br><br>Identity of SS-Japan shareholders as of January 2002 and description of how stock was transferred to SW | 11.15.05 M&C and earlier | Glenn to provide after his 11/05 trip to Japan. |
| Questions about South Wind | 11.15.05 M&C and earlier | Does SW engage in commercial transactions with entities not related to The Goldman Sachs Group, Inc., and subsidiaries?<br><br>Does SW have bank accts with other SS |

|  |  | companies? GS entities? Any entity? |
|---|---|---|
|  |  | Does SW hold annual meetings? Have payroll/permanent staff? Same staff as GS Cos? |
|  |  | Now, or since 2004, are SW employees, officers and/or directors also employees, directors or officers of GS companies? |

3

**Additional pending items carried forward from 11/15/05 Meet and Confer minutes**

EQUITY OWNERSHIP/INTER-COMPANY FUNDING

1. Documents by which South Wind Realty Finance (Cayman) Company ("SW") acquired the capital stock of Sports Shinko Co., Ltd. ("SS-J").

    You produced the agreement between SS-J and SW to transfer the capital stock of Sports Shinko (USA) Co., Ltd. ("SS-USA") from SS-J to SW (256 0243 et seq.), but we have seen no documentation of the transfer of SS-J stock to SW.

2. Identify the shareholder(s) of SS-J as of 12/31/2003 and all changes in ownership of those shares between 1/1/2004 and present.

3. If SW obtained 100% of the stock of SS-USA on or about April 20, 2004 (see SS response to RFA No. 26), why is SW acquiring SS-USA shares from SS-J under the 9/30/2004 Share Transfer Agreement?

4. SS Document number 256 0283 indicates that SS-J held 13,200 SS-USA shares (99.2%) and Sanyo Kosan Co., Ltd. held 100 SS-USA shares (0.8%). What is the date of the SS-USA share ownership reported by 256 0283? Did SS-J acquire the 100 SS-USA shares from Sanyo Kosan? If so, provide the documents reflecting that transfer. If SW acquired the 100 SS-USA shares from Sanyo Kosan, then provide the documents reflecting that transfer.

5. Has SW acquired any loans owned by SS-USA similar to SW's acquisition of loans owned by SS-J under the 12/30/2004 Loan Purchase Agreement (256 0239 et seq.) (the "LPA") and related Supplement to Loan Purchase Agreement (256 0288 et seq.) (the "SLPA")?

6. Identify the lawsuits referred to in the first "whereas" clause of the SLPA, which refers to "claims asserted by [SS-J] in the lawsuits now pending in the State of Hawai'i USA".

7. Annex A to the LPA identifies 27 loans that SW acquired from SS-J effective 12/30/2004. Are the balances listed as "Outstanding Principal Amount" ("OPA") and "Unpaid Interests" ("UI") those amounts as of 12/30/2004?

8. What was the OPA and UI for each of the 27 loans as of (i) 01/25/2002; and, (ii) 04/15/2002?

9. Did SS-J own each of the 27 loans as of (i) 01/25/2002; and, (ii) 04/15/2002?

10. If SS-J did not own each of the loans on (i) 01/25/2002; and, (ii) 04/15/2002, produce the documentation that evidences SS-J's acquisition of each such loan, including from whom the loan was acquired, the consideration paid to acquire the loan and the date and terms of the transaction.

11. Annex A to the LPA and SLPA lists 8 loans owned by SS-J in which SS-H is shown as the borrower. Those 8 loans are identified as follows:

4

| Date of Borrowing | Outstanding Principal Amount |
|---|---:|
| 04/23/1986 | $6,167,500.00 |
| 04/23/1986 | $10,543,883.97 |
| 09/17/1986 | $7,227,144.32 |
| 10/02/1987 | $7,702,572.88 |
| 10/15/1987 | $10,206,307.77 |
| 10/15/1987 | $11,322,542.67 |
| 10/20/1987 | $0.00 |
| 10/30/1987 | $4,687,874.73 |

For each of these 8 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences SS-H's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves SS-H's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by SS-H, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to SS-H that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

12. Annex A to the LPA and SLPA lists 5 loans owned by SS-J in which Sports Shinko (Florida) Co., Ltd. (SS-F) is shown as the borrower. Those 5 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---:|
| 09/21/1987 | $10,249,172.04 |
| 03/30/1990 | $3,000,000.00 |
| 04/13/1990 | $4,940,000.00 |
| 09/21/1992 | $3,000,000.00 |

5

| Not shown | $0.00 |

For each of these 5 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences SS-F's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves SS-F's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by SS-F, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to SS-F that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

13. Annex A to the LPA and SLPA lists 3 loans owned by SS-J in which SS-USA is shown as the borrower. Those 3 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---|
| 02/23/1989 | $6,560,000.00 |
| 02/15/1990 | $1,500,000.00 |
| 08/20/1991 | $251,500.00 |

For each of these 3 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences SS-USA's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves SS-USA's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by SS-USA, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to SS-USA that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

14. Annex A to the LPA and SLPA lists 2 loans owned by SS-J in which Ocean Resort Hotel Corporation (ORHC) is shown as the borrower. Those 2 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---|
| 02/23/1989 | $2,330,000.00 |
| 01/31/1990 | $410,000.00 |

For each of these 2 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences ORHC's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves ORHC's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by ORHC, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to ORHC that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

15. Annex A to the LPA and SLPA lists 3 loans owned by SS-J in which various SS-H subsidiaries are listed as the borrowers. Those 3 loans are identified as follows:

| Borrower | Date of Borrowing | Outstanding Principal Amount |
|---|---|---|
| Sports Shinko (Kauai) Co., Ltd. (SS-K) | 10/16/1990 | $1,600,000.00 |
| Sports Shinko (Mililani) Co., Ltd. (SS-M) | 08/31/1990 | $0.00 |
| Sports Shinko (Waikiki) Corp. (SS-W) | 06/05/1990 | ¥1,825,972,343 |

For each of these 3 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences each entities borrowing from SS-J, or other entity if SS-J is not the original lender.

7

    b.    The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

    c.    The documentation that proves each entities receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

    d.    The documentation of the gross amounts paid by each entity, or any of their affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

    e.    The documentation of any amounts of each such loan to SS-K, SS-M and SS-W that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

16. Has SW acquired any loans owned by SS Hawaii or any of SS Hawaii's wholly-owned subsidiaries to SS-J, SS-USA or any of the subsidiaries or affiliates of SS-J or SS-USA?

17. Were credits given or offsets provided to SS Hawaii or any of its subsidiaries for any or all of the unpaid portion of their loans to a) SS-USA, b) SS-J, and/or c) SS operating companies?

18. In order to understand and evaluate SS-J's actions reflected by the financial statements for SS-USA and its subsidiaries, we need the complete general ledger with detail activity in support of the "12/31/2004 Balance Sheet", "2004 Income Statement" and "2004 Trial Balance", documents 256 0253 to 256 0282, inclusive. These data are needed for the entire time that the books and records of the subject entities were maintained by SS-J management or its nominees. We would also like you to identify the person(s) who maintain these documents and the underlying general ledgers.

19. Identify the amount of the debt outstanding as of 1/25/2002 that Sports Shinko (Mililani) Co., Ltd. ("SS-M") is alleged to have owed SS-USA.

20. Identify the amount of the debt outstanding as of 1/25/2002 that Sports Shinko (Pukalani) Co., Ltd. ("SS-P") is alleged to have owed SS-USA.

21. Identify the amount of the debt outstanding as of 1/25/2002 that Sports Shinko (Kauai) Co., Ltd. ("SS-K") is alleged to have owed SS-USA.

22. For each of the debts identified in the three preceding requests, produce:

    a.    The promissory note that evidences the debt

    b.    The documentation of the gross amounts allegedly loaned by SS-USA, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

    c.    The documentation that proves receipt of the gross amounts allegedly loaned by SS-USA to SS-M, SS-P and SS-K, respectively.

    d.    The documentation of the gross amounts paid by SS-M, SS-P and SS-K, respectively, or any of their affiliates, to SS-USA in payment on the alleged debt.

    e.    The documentation of the amounts of alleged SS-USA loans to SS-M, SS-P and SS-K, respectively, that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

23.    Identify the amount of the debt outstanding as of 4/15/2002 that Sports Shinko (Waikiki) Corporation ("SS-W") is alleged to have owed SS-J which is related to the Ocean Resort Hotel Waikiki.

24.    Identify the amount of the debt outstanding as of 4/15/2002 that SS-W is alleged to have owed SS-J which is related to the Queen Kapiolani Hotel.

25.    For each of the debts identified in the two preceding questions, produce:

    a.    The promissory note that evidences the debt

    b.    The documentation of the gross amounts allegedly loaned by SS-J, including the date(s) on which loan(s) were made and, if other than cash, the method used to determine the loan value.

    c.    The documentation that proves receipt of the gross amounts allegedly loaned by SS-J to SS-W for each of the two properties.

    d.    The documentation of the gross amounts paid by SS-W or any of SS-W's affiliates to SS-J in payment on the alleged debt.

    e.    The documentation of the amounts of alleged SS-J loans to SS-W, that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

26.    Produce copies of 2004 state and federal tax returns for SS-USA & subsidiaries, and all 2004 tax returns filed by or on behalf of SS-J.

27.    Produce financial statements for the year ending December 31, 2004 for SS-USA and its subsidiaries and SW. If the financial statements have been reviewed, complied or audited by an accountant, we would also like the accountant's report.

28.    Produce financial statements for SS-J for 2001, 2002, 2003 and 2004. (We believe the year-end cutoff is the end of the calendar year, but it may be March 31.) If the financial statements have been reviewed, compiled or audited by an accountant, also produce the related accountant's reports and any accountant's reports or letters to SS-J's management or board of directors during those periods.

29.    Produce the complete general ledger with detail activity used to prepare SS-J's financial statements for 2002. We would also like you to identify the person(s) who maintain the 2002 general ledger.