Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON                1126-0
GLENN T. MELCHINGER        7135-0
American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawai`i 96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
E-mail: palston@ahfi.com
        gtm@ahfi.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation,<br><br>Plaintiff,<br><br>vs.<br><br>OR HOTEL, LLC, a Hawai`i limited liability company, KG HOLDINGS, LLC, a Hawai`i limited liability company, FRANKLIN K. MUKAI,<br><br>Defendants. | CV 04-00127 ACK/BMK<br><br>**THIRD AMENDED COMPLAINT (OCEAN RESORT HOTEL); SUMMONS IN A CIVIL CASE; CERTIFICATE OF SERVICE** |

EXHIBIT 1B

## THIRD AMENDED COMPLAINT
### (OCEAN RESORT HOTEL)

Plaintiff SPORTS SHINKO, CO., LTD. ("Plaintiff"), by and through its undersigned attorneys, alleges as follows:

### PARTIES

1.     Plaintiff is a Japan corporation, and its principal place of business is not in Hawai`i.  Plaintiff was formerly the sole shareholder of Sports Shinko (USA) Co., Ltd., a Delaware corporation ("SS USA"), which, is the sole shareholder of Sports Shinko (Hawai`i) Co., Ltd. ("SSH"), a Hawai`i corporation.  SSH owns all of the stock of Sports Shinko Resort Hotel Corporation ("SSRHC"), which, in turn, owns the stock of Sports Shinko (Waikiki) Corporation ("DEBTOR").

2.     Defendant OR HOTEL, LLC ("KG ORH") is a Hawai`i limited liability company with its principal place of business in the State of Hawai`i.  The members of KG ORH are all citizens of Hawai`i.

3.     Defendant KG HOLDINGS, LLC ("KG HOLDINGS"), is a Hawai`i limited liability company with its principal place of

2

business in the State of Hawai`i.  The members of KG Holdings are all citizens of Hawai`i.

    4.    Defendant FRANKLIN K. MUKAI ("MUKAI") is a citizen of Hawai`i.  At all relevant times, MUKAI was an employee and/or partner of McCORRISTON MILLER MUKAI MACKINNON LLP, A Limited Liability Law Partnership ("M4"), an officer and/or director of SSH and DEBTOR, and an attorney and agent for DEBTOR.  At all relevant times, MUKAI acted directly and through agents of M4.

## JURISDICTION

    5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

    6.    Venue is appropriate in this Court under 28 U.S.C. § 1391 because most of the events giving rise to Plaintiff's claims occurred in this district.

## GENERAL ALLEGATIONS

7.     Plaintiff is, and at all relevant times, was, a creditor of DEBTOR.  On December 30, 2004, Plaintiff transferred its loans to DEBTOR to South Wind Realty Finance (Cayman) Company LLC, a Cayman Islands exempted limited liability company ("South Wind"); Plaintiff, however, retains an interest in, and the right and obligation to pursue, this lawsuit for itself and South Wind.

8.     At all relevant times, SATOSHI KINOSHITA ("SATOSHI"), TAKESHI KINOSHITA ("TAKESHI") and TOSHIO KINOSHITA ("TOSHIO") (collectively, the "Kinoshitas"), and SHIGERU TOMITA ("TOMITA"), YASUO NISHIDA ("NISHIDA"), TSUGIO FUKUDA ("FUKUDA") and MUKAI (the Kinoshitas, TSUJIMOTO, NISHIDA, FUKUDA and MUKAI, are hereinafter collectively referred to as "Insiders") were officers and/or directors of DEBTOR.

9.     In 1990, DEBTOR acquired real and personal properties, which included the Ocean Resort Hotel Waikiki (the "ORH Properties").

4

10. Among other things, MUKAI assisted and advised DEBTOR in marketing and selling the ORH Properties.

11. At all relevant times, DEBTOR was insolvent, and its debt exceeded the fair market value of its assets.

## THE RCC'S ATTEMPTS TO COLLECT ON DEBT

12. In the late 1980's and early 1990's, Plaintiff (the ultimate parent corporation of DEBTOR), established a number of overseas subsidiaries. Plaintiff borrowed hundreds of millions of dollars from Japan-based lenders. Plaintiff in turn loaned those funds to its overseas subsidiaries, including the DEBTOR.

13. In the late 1990's a quasi-governmental Japan entity known as the Resolution and Collection Corporation (the "RCC") received an assignment of the majority of Plaintiff's debt and became Plaintiff's major creditor. The RCC was charged with collecting non-performing loans assigned to it.

14. The RCC engaged Plaintiff in extended negotiations regarding repayment. Plaintiff approached the RCC with repayment proposals that included sales proceeds of assets in Hawai`i and elsewhere.

15.   In or about May, 2000, the RCC began legal actions to collect on debt that was secured by Plaintiff's property and assets in Japan.  The RCC continued to make demands for repayment and Plaintiff negotiations continued to make repayment proposals involving Hawai`i assets.  In May 2000, SS Japan (through TOSHIO) represented the value of the Ocean Resort Hotel Waikiki as $9 million to the RCC.

16.   In response to the RCC's actions, Toshio Kinoshita and other Insiders formulated a plan to transfer assets held by DEBTOR and Plaintiff's other subsidiaries in Hawai`i outside the reach of the RCC and other creditors.  The plan entailed, among other things, transferring ownership and/or management rights over DEBTOR's assets to a person(s) or entity(ies) that was to be secretly controlled by some or all of the Insiders.

## RETAINING MANAGEMENT OVER DEBTOR

17.   With MUKAI's assistance, in or about August, 2000, Insiders incorporated a management company that became known as Resort Management Services (Hawai`i), Inc. ("RMS").

18. SATOSHI provided NISHIDA, then an officer of SSH and certain SSH subsidiaries, and a former officer of DEBTOR, with the funds to purchase RMS's stock. NISHIDA ostensibly became the sole director, shareholder, and president of RMS in September, 2000.

19. Contemporaneously, SATOSHI signed exclusive real estate brokerage listing agreements (the "Listing Agreements") for several of Plaintiff's subsidiaries in Hawai`i. Pursuant to these agreements, the real estate broker ("the "Broker") began to market these properties for sale.

20. Defendant MUKAI or some acting on his behalf and under his control drafted a stock option agreement (the "Option"), pursuant to which, NISHIDA, as the sole shareholder of RMS, granted SATOSHI, TAKESHI and Toshiya Kinoshita (the sons of TOSHIO) the right to purchase all of the stock of RMS for $1,500.00.

21. In or about October, 2000, SATOSHI, TAKESHI, and NISHIDA executed the Option.

22. NISHIDA was only a strawman for the Kinoshitas, and he operated RMS for their benefit based upon the Option.

23. The Insiders, including specifically MUKAI, concealed the Option and the Kinoshitas' interest in RMS from the RCC and Plaintiff's other creditors, (and later, Plaintiff's Bankruptcy Trustee).

24. In or about September, 2000, the Insiders (including specifically MUKAI), prepared and implemented agreements under which DEBTOR, and other Hawai`i-based subsidiaries of SSH for which Insiders served as officers and/or directors (collectively the "Sister Companies"), to enter into management agreements with RMS (the "Management Agreements").

25. Pursuant to the Management Agreements, RMS agreed to manage properties owned by DEBTOR and the Sister Companies. Among other things, the Management Agreements required DEBTOR and the Sister Companies to pay management fees, employee salaries, and other expenses to RMS, and the payment of substantial termination fees if the managed properties were transferred without RMS' consent and the transferee would

8

not assume the Management Agreements (the "Termination Fees").
The Termination Fees totaled $3.5 million.

26.   No present and reasonably equivalent value was
received by DEBTOR or the Sister Companies in exchange for the
Management Agreements.

27.   Insiders intended that these Management Contracts
would impair the value of the assets of DEBTOR and the Sister
Companies, and appear to make it more difficult for their creditors
and Plaintiff's creditors to seek any recovery from those assets
and/or to transfer value the Kinoshitas through their secret control
of RMS.

28.   Defendant MUKAI knew that the Management
Agreements and the Option were intended to transfer assets of
DEBTOR and the Sister Companies outside the reach of their
respective pre-existing creditors (including Plaintiff) for the benefit
of the Insiders, without any present and reasonably equivalent
value passing to DEBTOR or Contracting Companies.

## MAINTAINING OWNERSHIP OF DEBTOR

     29.  In early 2001, the RCC threatened to put SS Japan into legal reorganization proceedings in Japan. The RCC also expressed interest in compelling Plaintiff to sell its overseas assets and the assets of Plaintiff's direct and indirect subsidiaries.

     30.  In late November, 2001, TOSHIO and other Insiders created a plan to cause RMS, or another entity owned and/or controlled by the Kinoshitas, to purchase the stock or assets of DEBTOR (the "Plan").

     31.  SATOSHI informed MUKAI of the Plan.

     32.  MUKAI assisted TOSHIO and the Insiders with taking steps to analyze and implement the Plan, even though they were aware that the DEBTOR was insolvent and the RCC was pursuing legal action against Plaintiff.

     33.  The Insiders, including MUKAI, caused Grant Thornton, LLP to analyze the tax consequences of the transfers proposed under the Plan.

34. With the assistance of MUKAI, the Insiders marketed the DEBTOR's properties in 2000 and 2001. They received and rejected a number of offers through December, 2001.

35. In addition, MUKAI searched for buyers for the Hawai'i properties owned by the DEBTOR and the Sister Companies.

36. On December 4, 2001, SATOSHI received a letter of interest to purchase all of the assets of DEBTOR and the Sister Companies from Defendant KG Holdings, LLC ("KG"). KG's interest was instigated by MUKAI, who had a social and professional relationship with insiders of KG.

37. After it received KG's December 4, 2001 letter, DEBTOR, through SATOSHI, instructed the Broker to cease all marketing efforts.

38. Despite the Listing Agreements, the Insiders then began exclusive dealings with KG without involving the Broker. KG's representatives flew to Japan to meet with TOSHIO and SATOSHI, among others.

39.    The Insiders rejected purchase offers provided by the Broker in order to further their plan to retain control and ownership of DEBTOR's assets, and to hinder or delay Plaintiff from being able to collect on its loan to DEBTOR which, in turn, would hinder Plaintiff's creditors, including the RCC.

40.    In early January, 2002, the RCC asked TOSHIO to voluntarily place Plaintiff into reorganization in Japan. On or about January 15, 2002, TOSHIO met with RCC to discuss a plan for repayment of Plaintiff. The RCC rejected the repayment proposal and began steps to force Plaintiff into bankruptcy.

**PURCHASE AND SALE AGREEMENT**

41.    On or about January 15, 2002, DEBTOR and Defendant KG HOLDINGS and its nominee (KG ORH), with the assistance of MUKAI, entered into an agreement ("PSA") to buy the assets of the DEBTOR and the Sister Companies. The contract price was below the fair market value of the assets to be sold and subsequently less than the aggregate value of competing offers from qualified buyers that the Insiders had previously rejected.

42. At all relevant times, the Insiders (including MUKAI), KG ORH, and KG HOLDINGS knew or should have known that the amount to be paid by KG ORH for the DEBTOR's assets was significantly less than (a) their fair market value, and (b) their tax assessed value, and that DEBTOR would not, and did not, receive reasonably equivalent value for its assets.

43. At all relevant times, Insiders, KG ORH, and KG HOLDINGS each knew or reasonably should have known that DEBTOR was insolvent.

44. By selling DEBTOR's assets to KG ORH on the terms negotiated with KG HOLDINGS, the INSIDERS, with the assistance of MUKAI, realized substantially less than if they had sold to others at arm's length. As a result, DEBTOR received less than it should have to repay Plaintiff.

45. KG ORH refused to assume the Management Agreement concerning the ORH Properties, thereby triggering DEBTOR's obligation to pay the Termination Fees to RMS.

46. On or about January 28, 2002, the RCC initiated bankruptcy proceedings against Plaintiff in the District Court in Osaka, Japan.

47. On or about January 30, 2002, in partial payment of the Termination Fees, Sports Shinko (Pukalani) Co., Ltd. ("SSP"), through SATOSHI, executed a deed for residential real property located at Makawao, Maui, at TMK (2) 3-2-020-034 (the "Pukalani Residence") to RMS. SSP did not receive present and reasonably equivalent value in exchange for the transfer of the Pukalani Residence to RMS.

48. On or about February 4, 2002, the District Court for Osaka, Japan appointed a Trustee and Deputy Trustees to manage Plaintiff's domestic and overseas assets.

49. In early March, 2002, the Deputy Trustee in bankruptcy for SS Japan and his assistants met in Hawai`i with SATOSHI, MUKAI and other attorneys, who failed to disclose all material information about the Plan, and transactions described above, and the Insider's efforts to prevent Plaintiff and its creditors from realizing the full value of the DEBTOR's assets.

## CLAIMS FOR RELIEF

### COUNT I: Haw. Rev. Stat. § 651C-5(a)
### (KG HOLDINGS, KG ORH)

50.   Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

51.   The transfer of the DEBTOR'S assets to Defendants KG ORH was fraudulent under Haw. Rev. Stat. § 651C-5(a) because no reasonably equivalent value was received by DEBTOR, which was either insolvent at the time of the transfer or rendered insolvent by the transfer.

52.   As a result of the transfer and other fraudulent actions, creditors of DEBTOR, including Plaintiff, were damaged and Plaintiff is entitled to damages and other appropriate remedies authorized by Haw. Rev. Stat. § 651C-7(a) in accordance with the proof at trial.

### COUNT II:  Haw. Rev. Stat. § 651C-4
### (KG HOLDINGS, KG ORH)

53.   Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

54.   DEBTOR's transfer of the ORH Properties to KG ORH was fraudulent because the transfer was made with actual intent to hinder, delay, or defraud one or more of DEBTOR's creditors.

55.   The actual intent to hinder, delay or defraud is evidenced by, among other things, the following facts:

        a.    The transfer to KG ORH involved substantially all of DEBTORS' assets;

        b.    DEBTOR was insolvent or became insolvent as a result of the transfer;

        c.    Insiders destroyed documents and concealed information about the transfer from DEBTOR's successor management and the Bankruptcy Trustee for SS Japan;

    d.    Insiders concealed their interest in RMS and the proceeds from the management contracts, which encumbered the DEBTOR's assets; and

    e.    The price paid for DEBTOR's assets was below the fair market value of those assets.

56.    As a result of this fraudulent transfer, creditors of DEBTOR, including Plaintiff, were damaged and Plaintiff is entitled to damages and all other appropriate remedies authorized by Haw. Rev. Stat. § 651C-7(a) in accordance with the proof at trial.

### COUNT III:  Aiding and Abetting/Conspiracy to Violate Haw. Rev. Stat. ch. 651C (INSIDERS, KG HOLDINGS, KG ORH)

57.    Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

58.    The acts of MUKAI, KG HOLDINGS, and/or KG ORH caused and/or enabled the transfer of the DEBTOR's assets to KG ORH and an array of assets to RMS in violation of Haw. Rev. Stat. ch. 651C.

59. SATOSHI, TAKESHI, TOSHIYA KINOSHITA, and NISHIDA, with the help of the MUKAI and his agents, entered into agreements to fraudulently convey assets of DEBTOR to Insiders in violation of Haw. Rev. Stat. ch. 651C.

60. MUKAI, KG HOLDINGS, and KG ORH knew or should have known of that the Insiders were violating and/or intending to cause the DEBTOR to violate Haw. Rev. Stat. ch. 651C.

61. MUKAI, KG HOLDINGS, and KG ORH knowingly gave substantial assistance or encouragement to the Insiders in connection with their violations of aw. Rev. Stat. ch. 651C.

62. The Defendants' conduct injured the DEBTOR's creditors, including Plaintiff, in an amount to be determined at trial.

### COUNT IV: Breach of Fiduciary Duty
### (MUKAI)

63. Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

64.   At all relevant times, MUKAI was an attorney, officer and/or director of DEBTOR, and an attorney for Plaintiff.  Upon the insolvency of DEBTOR, MUKAI owed a fiduciary duty, including a duty of care and a duty of loyalty, to creditors of DEBTOR, including Plaintiff, to exercise his judgment in an informed, good faith effort to maximize the value of, and sales proceeds from, DEBTOR's assets for the benefit of Plaintiff and DEBTOR's other creditors.

65.   MUKAI, alone and in concert with others, breached his duties to Plaintiff by, *inter alia*, purposefully allowing Insiders to engage in self-dealing transactions, abandoning corporate opportunities to obtain the full value of DEBTOR's assets for the benefit of creditors, and by conspiring to, causing, or assisting the fraudulent conveyance of DEBTOR's assets in violation of Haw. Rev. Stat. ch. 651C.

66.   Plaintiff was proximately damaged by such breaches in an amount to be determined at trial.

### Count V: Aiding and Abetting Breach of/Conspiracy to Breach Fiduciary Duties
### (MUKAI, KG ORH, KG HOLDINGS)

67.  Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

68.  Upon the insolvency of DEBTOR, the Insiders including MUKAI owed fiduciary duties to protect the interests of creditors of DEBTOR, including Plaintiff.

69.  The Insiders collaborated to prepare, execute and implement agreements that breached those fiduciary duties to Plaintiff whereby, *inter alia*, Insiders engaged in self-dealing trans-actions and fraudulently conveyed DEBTOR's assets, and such conduct frustrated the rights of DEBTOR's creditors, including Plaintiff.

70.  MUKAI knew that the conduct of his fellow Insiders constituted a breach of their fiduciary duties, and gave substantial assistance and encouragement to those Insiders in such conduct.

71. MUKAI caused and/or enabled those Insiders to breach their fiduciary duties, and such acts were in furtherance of their conspiracy.

72. MUKAI, KG ORH, and KG HOLDINGS knew or reasonably should have known of the Insiders' fiduciary duties to Plaintiff.

73. MUKAI, KG ORH and KG HOLDINGS affirmatively and knowingly agreed to aid Insiders in breaching their fiduciary duties to Plaintiff, by assisting them in, *inter alia,* self-dealing transactions and fraudulently transferring DEBTOR's assets. MUKAI, KG ORH and KG HOLDINGS knew these actions would frustrate the rights of DEBTOR's creditors, including Plaintiff.

74. MUKAI knowingly participated and provided substantial assistance and encouragement to the other Insiders in breaching their fiduciary duties.

75. Plaintiff was proximately damaged by such actions and omissions in an amount to be determined at trial.

## Count VI:  Deepening Insolvency
## (MUKAI)

76.  Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

77.  MUKAI engaged in conduct that he knew would aggravate DEBTOR's insolvency and fraudulently prolong its life, including assisting Insiders in rejecting offers to purchase the ORH Properties for fair market value or greater, and in accepting the offer of KG HOLDINGS, whose offer was significantly less than fair market value and less than offers previously made by other qualified buyers.

78.  By rejecting these offers, Insiders, with the assistance of MUKAI, fraudulently prolonged the life of DEBTOR and further deepened its insolvency.

79.  MUKAI fraudulently prolonged DEBTOR's life in order to hinder or prevent Plaintiff from collecting on its debt.

80.  MUKAI's acts and omissions were in bad faith and/or with the intent to harm the DEBTOR's creditors.

81.  Plaintiff was proximately damaged by such actions

and omissions in an amount to be determined at trial.

## Count VII: Attorneys' Fees (Third Party Litigation exception)
## (MUKAI, KG HOLDINGS, KG ORH)

82.  Plaintiff realleges and incorporates the allegations

contained in the preceding paragraphs, as though fully set forth

herein.

83.  The wrongful acts of Defendants, and those acting

under their direction and control, caused Plaintiff to incur

attorneys' fees and expenses to protect its rights.

## COUNT VIII:  Rescission
## (KG ORH)

84.  Plaintiff realleges and incorporates the allegations

contained in the paragraphs above, as though fully set forth herein.

85.  KG ORH had notice of limitations of Insiders'

authority to transfer the ORH Properties, namely, that Insiders

owed a fiduciary duty to Plaintiff, and were obligated to exercise

judgment in an informed, good faith effort to maximize DEBTOR's

long-term wealth creating capacity.

86.   KG ORH knew or should have known that Insiders were acting improperly by causing DEBTOR to reject offers to purchase DEBTOR's assets for at or above fair market value, and to accept the significantly lower offer of KG ORH.

87.   KG ORH had reason to believe that Insiders were acting for their own benefit.

88.   The sale of the DEBTOR's assets to KG ORH was suspicious on its face given the speed of the transaction and its terms.

89.   Circumstances indicated Insiders were acting in fraud of DEBTOR's creditors.

90.   KG ORH knew that Insiders were not acting for the benefit of DEBTOR's creditors.

91.   Plaintiff is entitled to rescission of the transfer of the ORH Properties.

## COUNT IX: Creditor Fraud
## (MUKAI)

92.    Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

93.    At all relevant times, MUKAI knew or should have known DEBTOR was either insolvent or would be rendered insolvent by the transfer of DEBTOR's assets.

94.    At all relevant times, MUKAI knew or should have known DEBTOR was not receiving reasonably equivalent value for DEBTOR's assets.

95.    MUKAI knew or should have known Plaintiff was a creditor of DEBTOR.

96.    MUKAI intentionally or recklessly participated in Insiders' unlawful conduct to hinder, delay, or defraud creditors of DEBTOR, including Plaintiff.

97.    As a result of MUKAI's acts and omissions, Plaintiff was injured in an amount to be determined at trial.

## COUNT X: Unjust Enrichment
### (KG HOLDINGS and KG ORH)

98. Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

99. Defendants KG HOLDINGS and KG ORH have wrongfully received, retained and used the benefit of the ORH Properties as a result of their transfer at less than fair market value.

100. It would be unjust to allow Defendants KG HOLDINGS and KG ORH to retain and use the benefit of the ORH Properties without compensating Plaintiff.

101. Defendants KG HOLDINGS and KG ORH should be ordered: (1) to make restitution to Plaintiff in an amount to be proven at trial; and (2) to compensate Plaintiff for the fair and reasonable value of the unjust retention and use of these benefits in an amount to be proven at trial.

## Punitive Damages
### (All Defendants)

102. Plaintiff realleges and incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

103. Each Defendant has knowingly, willfully, and wantonly caused, conspired to, and/or substantially assisted or encouraged the other to, fraudulent convey assets of DEBTOR and harm creditors of DEBTOR, including Plaintiff.

104. Plaintiff is entitled to an award of punitive damages against each of them.

WHEREFORE, Plaintiff requests that the Court:

A.     Declare that DEBTOR's transfer of the ORH Properties to Defendants KG HOLDINGS and/or KG ORH was fraudulent as to Plaintiff;

B.     Avoid the foregoing transfers to the extent necessary to satisfy Plaintiff's claim and/or grant Plaintiff any other relief appropriate under Haw. Rev. Stat. § 651C-7(a);

C.  Impose a constructive trust on all assets transferred by DEBTOR to KG HOLDINGS and/or KG ORH, and all profits earned thereon;

D.  Order an accounting of all revenues received and expenses paid by KG HOLDINGS and/or KG ORH in connection with the ORH Properties;

E.  Award Plaintiff general, special and punitive damages commensurate with the proof at trial; and

F.  Award Plaintiff its attorneys' fees and costs and such other and further relief as may be just and proper.

DATED:  Honolulu, Hawai`i, January 19, 2007.

/s/ Glenn T. Melchinger
PAUL ALSTON
GLENN T. MELCHINGER
Attorneys for Plaintiff
SPORTS SHINKO CO., LTD.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>OR HOTEL, LLC, a Hawaiʻi limited liability company, KG HOLDINGS, LLC, a Hawaiʻi limited liability company, FRANKLIN K. MUKAI,<br><br>    Defendants. | ) CV 04-00127 ACK-BMK<br>)<br>) **SUMMONS**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**SUMMONS**

STATE OF HAWAII

To the above-named Defendant(s):

You are hereby summoned and required to serve upon

ALSTON HUNT FLOYD & ING, attorneys for Plaintiff, whose address

is 18th Floor, ASB Tower, 1001 Bishop Street, Honolulu,

Hawaii 96813, an answer to the Third Amended Complaint which

is herewith served upon you, within ten (10) days after service of

this Summons upon you, exclusive of the day of service. If you fail

626504-1/6850-5

to do so, judgment by default will be taken against you for the relief demanded in the Third Amended Complaint.

This Summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits, in writing on this Summons, personal delivery during those hours.

A failure to obey this Summons may result in an entry of default and default judgment against the disobeying person or party.

DATED: Honolulu, Hawai'i, _____.


_____
Clerk of the Above-Entitled Court

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the dates and by the

methods of service noted below, a true and correct copy of the

foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

William A. Bordner    bbordner@bmbe-law.com    *January 19, 2007*
                    turcia@bmbe-law.com

Attorney for Defendant
and Third-Party Plaintiff
FRANKLIN K. MUKAI

Robert A. Marks    ram@pohlhawaii.com    *January 19, 2007*
              sfujioka@pohlhawaii.com

Simon Klevansky    sklevansky@ggik.com    *January 19, 2007*

Attorneys for Defendants
KIAHUNA GOLF CLUB, LLC;
KG KAUAI DEVELOPMENT, LLC;
PUKALANI GOLF CLUB, LLC;
KG MAUI DEVELOPMENT, LLC;
MILILANI GOLF CLUB, LLC;
QK HOTEL, LLC;
OR HOTEL, LLC; and
KG HOLDINGS, LLC

DATED:    Honolulu, Hawai`i, January 19, 2007.

/s/ Glenn T. Melchinger
PAUL ALSTON
GLENN T. MELCHINGER

Attorneys for Plaintiff

636096_1 / 6850-5