Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

| | |
|---|---|
| PAUL ALSTON | 1126-0 |
| BRUCE H. WAKUZAWA | 4312-0 |
| GLENN T. MELCHINGER | 7135-0 |
| JASON H. KIM | 7128-0 |

American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, Hawai'i 96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
Email: gtm@ahfi.com

Attorneys for Plaintiffs
and Third-Party Defendants
the Sports Shinko Companies

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation,<br><br>Plaintiff,<br><br>vs.<br><br>QK HOTEL, LLC, a Hawai`i limited liability company; KG HOLDINGS, LLC, a Hawai`i limited liability company; FRANKLIN K. MUKAI, | CV 04-00124 ACK-BMK<br><br>**PLAINTIFF SPORTS SHINKO CO. LTD.'S MEMORANDUM IN OPPOSITION TO KG PARTIES' SECOND AMENDED MOTION TO COMPEL DISCOVERY AND TO SET SCHEDULING ORDER, FILED MAY 4, 2007; DECLARATION OF JASON H. KIM; EXHIBITS "1" – "5"; CERTIFICATE OF SERVICE** |

645,998-1/6850-5

| | |
|---|---|
|       Defendants, | ) |
| | ) DATE:   June 1, 2007 |
|   and | ) TIME:   2 p.m. |
| | ) JUDGE: Barry M. Kurren |
| FRANKLIN K. MUKAI, | ) |
| | ) |
|       Third-Party Plaintiff, | ) |
| | ) |
|   vs. | ) |
| | ) |
| SPORTS SHINKO (USA) CO., LTD., et al., | ) |
| | ) |
|       Third-Party Defendants, | ) |
| | ) |
|   and | ) |
| | ) |
| SPORTS SHINKO (HAWAII) CO., LTD., etc., et al., | ) |
| | ) |
|       Third-Party Defendants/ Counterclaimants, | ) |
| | ) |
|   vs. | ) |
| | ) |
| QK HOTEL, LLC, a Hawai`i limited liability company; KG HOLDINGS, LLC, a Hawai`i limited liability company, FRANKLIN K. MUKAI, | ) |
| | ) |
|       Third-Party Counterclaim Defendants. | ) |
| _____ | ) |

645,998-1/6850-5

2

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation, | ) CIVIL NO. CV 04-00127<br>)           ACK/BMK |
| Plaintiff, | ) |
| vs. | ) |
| OR HOTEL, LLC, a Hawai`i limited liability company; KG HOLDINGS, LLC, a Hawai`i limited liability company; FRANKLIN K. MUKAI, | ) |
| Defendants, | ) |
| and | ) |
| FRANKLIN K. MUKAI, | ) |
| Third-Party Plaintiff, | ) |
| vs. | ) |
| SPORTS SHINKO (USA) CO., LTD., etc., et al., | ) |
| Third-Party Defendants, | ) |
| and | ) |
| SPORTS SHINKO (HAWAII) CO., LTD., etc., et al., | ) |
| Third-Party Defendants/ Counterclaimants, | ) |

645,998-1/6850-5                                3

|  |  |
|---|---|
| vs. | ) |
|  | ) |
| OR HOTEL, LLC, a Hawai`i limited liability company; KG HOLDINGS, LLC, a Hawai`i limited liability company; FRANKLIN K. MUKAI, | ) ) ) ) ) ) |
|  | ) |
| Third Party Counterclaim Defendants. | ) ) ) |

**PLAINTIFF SPORTS SHINKO CO. LTD.'S MEMORANDUM IN OPPOSITION TO KG PARTIES' SECOND AMENDED MOTION TO COMPEL DISCOVERY AND TO SET SCHEDULING ORDER, FILED MAY 4, 2007**

## I. INTRODUCTION

The KG Parties Second Amended Motion to Compel Discovery and to Set Scheduling Order, filed May 4, 2007 ("Motion to Compel"), confuses issues of substantive law with Plaintiff Sports Shinko Co., Ltd.'s ("SS Japan") obligations under the discovery rules. The KG Parties dispute whether there is any intercompany debt owed by Sports Shinko Waikiki Corporation("SS Waikiki") to SS Japan, as required to support a claim under Hawai`i's Uniform Fraudulent Transfer Act, HRS Chapter 651C ("HUFTA"). It does not follow from this dispute, however, that SS Japan is required to

engage in the burdensome exercise of accounting for the debt quarter-by-quarter for the past 17 years, as demanded by the KG Parties.

Instead, SS Japan properly designated a number of documents that are relevant to the intercompany debt. SS Japan fulfilled its discovery obligations pursuant to F.R.C.P. 33(d) by designating these documents. The KG Parties are equally capable of reviewing and analyzing those documents to ascertain the information they request.

The KG Parties also request the underlying transactional detail for the 2004 financial statements for SS Japan's subsidiary, Sports Shinko (USA) Co., Ltd. ("SS USA"). SS Japan has produced all the financial information related to SS USA in its control. Indeed, the KG Parties – and not SS Japan – have possession of much of the detailed financial information they are seeking.

## II.   BACKGROUND

These consolidated cases arise from an allegation that the KG Parties were the beneficiaries of a fraudulent transfer of two hotel properties formerly held by SS Waikiki, the Queen Kapiolani

Hotel and the Ocean Resort Hotel.  SS Japan was the ultimate parent company of SS Waikiki and had loaned SS Waikiki the funds the purchase the hotels in 1990.

The agreement that led to the transfers, the Purchase and Sale Agreement ("PSA"), was executed on January 15, 2002.  At that time, the various Sports Shinko companies were controlled by Toshio Kinoshita and members of his family.  Defendant Franklin K. Mukai served as a director of, and attorney for, various Sports Shinko subsidiaries in Hawai`i, including SS Waikiki.

Days later, on January 28, 2002, Japan's Resolution and Collection Corporation initiated bankruptcy proceedings against SS Japan in Osaka, Japan.  On February 4, 2002, the Japanese court appointed a Trustee and Deputy Trustee to manage SS Japan's domestic and overseas assets.  Litigation was commenced by the Deputy Trustee in this Court to recover the Hawai`i properties subject to the PSA pursuant to HUFTA, including the Queen Kapiolani and Ocean Resort Hotels.

Because this litigation was commenced by the Deputy Trustee, rather than by the incumbent management of SS Japan

and its subsidiaries, SS Japan has limited access to the individuals most knowledgeable about the Sports Shinko companies' finances and records. Indeed, the Deputy Trustee – in a separate case – sued various former board members and officers of the Sports Shinko Companies. *See* attached Declaration of Jason H. Kim at ¶ 2 ("Kim Decl.").

Despite these considerable obstacles, SS Japan has made approximately 250 boxes of its records available for review to Defendants' counsel, starting from February 2005.[1] *Id.* at ¶ 3. And in response to interrogatories from Defendant Mukai seeking information about the intercompany debt,[2] Defendants designated approximately nine boxes of documents. *Id.* at ¶ 4.

---

[1] This includes records held by third parties, such as the Sports Shinko companies' accountants, Grant Thornton, and their former law firm, McCorriston Miller Mukai MacKinnon.

[2] Although Mr. Mukai issued the interrogatories at issue in this Motion to Compel, it is unclear whether he disputes the existence of the intercompany debt since he has not joined the Motion to Compel. Such a position would be ironic, to say the least, since he provided the legal advice to the Sports Shinko Companies on this very issue, as discussed further below.

### III. ARGUMENT

#### A. SS Japan Has Fully Complied With its Discovery Obligations With Respect to Intercompany Debt.

The KG Parties devote much of their Motion to Compel to arguing that there is insufficient evidence of intercompany debt between SS Japan and SS Waikiki and emphasizing the heightened standard of proof for an HUFTA claim. If, as the KG Parties contend, there is insufficient evidence of debt to support an HUFTA claim, the KG Parties should seek summary judgment on this issue (which they have done, by motion filed on May 10, 2007) and not seek to impose burdensome discovery obligations on SS Japan. The KG Parties have cited no authority to support their extraordinarily burdensome demand for a detailed, quarter-by-quarter accounting of the debt for a 17-year period.

Indeed, the applicable authority is to the contrary. SS Japan's designation of business records pursuant to F.R.C.P. 33(d) was entirely proper. "The idea behind the rule is that when the burden of deriving the information from documents is equal between the parties, the interrogating party should bear the burden

of compiling the information." *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Company*, 105 F.R.D. 16, 44 (S.D.N.Y. 1984). One party's greater familiarity with the designated documents does not preclude resort to Rule 33(d). *Id.*

Here, given the unusual circumstances of this case, the burden of deriving the information from the documents listed by SS Japan in its response to Defendant Mukai's interrogatories is equal as between the parties. To respond in the level of detail demanded by the KG Parties, SS Japan would review and analyze the very same documents it listed in its interrogatory response.[3] Kim Decl. at ¶ 5. The KG Parties and SS Japan have the same ability to engage in this project. Although the KG Parties would doubtless like to "shift the cost of preparing this case for trial to [SS Japan]," Rule 33(d) precludes this tactic. *Webb v. Westinghouse Electric*

---

[3] SS Japan anticipates retaining an expert to testify concerning the existence, validity, and amount of the intercompany debt and to disclose, in conjunction with the deadline for expert disclosures, its own accounting of the intercompany debt. Thus, the KG Parties' request for a detailed accounting now should also be denied as premature.

*Corp.*, 81 F.R.D. 431, 435 (E.D. Penn. 1978) (employer was not required to prepare a compilation of information when documents from which compilation could be made were produced to plaintiff).

In fact, of the parties, Defendant Mukai is in the best position to provide the information demanded by the KG Parties. Mr. Mukai was the architect of the debt / equity structure of the Sports Shinko Hawai`i companies. *See* Ex. "1" to Kim Decl. He also served on their boards for almost the entire relevant time period. Of the parties to this case, he has the most personal knowledge of the existence and validity of the intercompany debt.

Once a party has invoked Rule 33(d), the burden falls on the interrogating party to prove that the Rule 33(d) answer is incomplete. *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221, 227 (10th Cir. 1976). "Plaintiffs' expressions of general discontent with having to obtain discovery pursuant to the provisions of Rule 33[d], however severe the discontent may be, is not a sufficient showing under the law for the Court to deny the defendants the option the rule provides." *Petroleum Insurance Agency, Inc. v.*

*Hartford Accident and Indemnity Co.,* 111 F.R.D. 318, 320 (D. Mass. 1983).

The KG Parties have not met their burden of showing that SS Japan's designation was incomplete.  First, as is clear from the memorandum in support of their motion, they already know the basic information about the relevant intercompany debt.  On page 9, they cite the documents that they believe to be relevant to the SS Japan – SS Waikiki debt at issue in this case.  They also cite and attach as exhibits 2A and 2B the Loan Purchase Agreement and the Supplement to Loan Purchase Agreement – the documents that govern the disposition of the SS Japan debt after SS Japan emerged from insolvency.  Indeed, the fact that the KG Parties have filed a summary judgment motion demonstrates that they believe they already have adequate information about the intercompany debt to defend this lawsuit.

The KG Parties also complain that SS Japan has engaged in "'dump truck' discovery."  Contrary to this vague allegation, SS Japan has designated a limited quantity of documents in response to the interrogatories concerning intercompany debt: approximately

nine boxes. Given that SS Japan and third parties in this case (most notably Mr. Mukai's law firm and Grant Thornton) have collectively produced approximately 250 boxes of documents and that the intercompany debt was – in some cases – incurred over 20 years ago, this is a reasonable number of documents to list.

To the extent the KG Parties merely request clarification of the specific intercompany debt SS Japan is suing on, SS Japan submits Exhibits "2" and "3":[4] the 1990 promissory note that forms the basis of its HUFTA claim and a financial statement for 2002 showing that this debt continued in existence up through and past the date of the transfers pursuant to the PSA. This debt was sold to South Wind Realty Finance Cayman Company ("South Wind") in 2004 and is listed on page 2 to Annex A to the Supplement to Loan Purchase Agreement ("Supplement") (attached as Exhibit 2B to the Motion to Compel). Collectively, these documents on their face provide most of the information requested by items 1, 2, 3, and 7

---

[4] Exhibits "2," "3," and "5" contain confidential information of SS Japan. SS Japan will seek leave to file redacted versions of these documents. Pending such permission, SS Japan submits these exhibits *in camera* for the Court's convenience.

on page 3 of the KG Parties' memorandum.  The information requested by the remaining items on page 3 is the type of information that the KG Parties can compile for themselves based on the information above.  SS Japan has no obligation to provide the KG Parties with a detailed accounting conforming to the KG Parties' exact specifications.

    **B.**    **SS Japan Has Fully Complied with Its Discovery Obligations with Respect to the 2004 Sale of its Debt.**

As with their argument about proof of intercompany debt, the KG Parties' argument about the disposition of that debt in 2004 confuses issues of substantive law with discovery issues.  As is clear from the KG Parties' memorandum, they are in possession of the operative legal documents that govern the sale of the SS Japan debt to South Wind.  They do not specify what additional discovery they seek on this issue.

If the KG Parties are concerned that SS Japan is not the real party in interest, they are free to file a motion pursuant to F.R.C.P. Rule 17(a).[5]  The Purchase Agreement and the Supplement

---

[5] Such a motion would be unsuccessful, however, as the Supplement makes clear that South Wind agrees to be bound by

to the Purchase Agreement speak for themselves and provide all the facts needed to determine this issue.

The KG Parties also, for no apparent reason, discuss SS Japan's corporate structure. Although SS Japan is a wholly-owned subsidiary of Accordia Golf, Ltd., the KG Parties do not explain how this fact is relevant to discovery or whether SS Japan is the real party in interest. SS Japan is fully capable of bringing this lawsuit without the involvement or joinder of its parent company.

**C.   SS Japan Has Fully Complied with Its Discovery Obligations with Respect to the 2004 SS USA Financial Statements.**

The KG Parties seek "general ledger and transaction details" underlying the December 30, 2004 consolidated financial statements of SS-USA and it subsidiaries. The KG Parties have provided no specific basis to establish that SS Japan has withheld production of responsive documents.

---

this action. Under Rule 17(a), a case may not be dismissed on the ground that is it not prosecuted in the name of the real party in interest if the real party in interest ratifies the commencement of the action. South Wind has clearly done so in the Supplement.

645,998-1/6850-5                              14

Indeed, much of the detailed information the KG Parties seek is in their control, and not SS Japan's. As part of the transfers pursuant to the PSA, the local-subsidiary-level financial records maintained on the properties were sold to the KG Parties (and other related subsidiaries), who took control of them when they took possession of the properties. Kim Decl. at ¶ 6. And after the transfer of the properties, the Sports Shinko Companies paid the KG Parties to maintain the financial records for the Hawai`i subsidiaries until the end of 2002. *See* attached Ex. "4" to Kim Decl. After 2002, the Hawaii subsidiaries were essentially inactive and engaged in no business activities, so there is little transaction-level detail to provide, and none that seems even remotely relevant.

Furthermore, in 2003, the financial records for the Sports Shinko Hawaii companies were maintained by Grant Thornton in Honolulu. The KG Parties have subpoened Grant Thornton and received over 40,000 pages of documents. Kim Decl. at ¶ 7. The 2004 SS USA financial statements were based on Grant Thornton's 2003 financial statements, with various adjustments to reflect the 2004 acquisition by South Wind and other matters. *See*

Ex. "5" (submitted *in camera*). In its most recent production, Grant Thornton produced approximately 40 pages of detail relating to the 2004 SS USA financial statement, including income statements, balance sheets, and trial balances for the SS USA subsidiaries. *See* Kim Decl. at ¶ 8. SS Japan's counsel have no further information to provide at this time about the 2004 SS USA financial statements but continue to make inquiries with SS Japan and third parties to determine if further information is available. *Id.* at ¶ 9.

### D. Scheduling Order

SS Japan has no objection to this Court establishing a scheduling order pursuant to Rule 16, as the parties have been unable to agree on one. The KG Parties argue that they cannot commit to a deadline to add new parties because of the alleged uncertainty over the real party in interest and ownership of the debts. As explained above, however, there is no uncertainty: the Loan Purchase Agreement and Supplement governs the ownership of the debt and resolves the real party in interest issue. Thus, this alleged uncertainty is no basis for delaying the deadline for adding new parties.

## IV.  CONCLUSION

For the foregoing reasons, the KG Parties' Motion to Compel should be denied.

DATED:  Honolulu, Hawai`i, May 14, 2007.

/s/ Jason H. Kim
PAUL ALSTON
BRUCE H. WAKUZAWA
GLENN T. MELCHINGER
JASON H. KIM
Attorneys for Plaintiffs
and Third-Party Defendants the
Sports Shinko Companies