CARLSMITH, WICHMAN, CASE, MUKAI AND ICHIKI

ATTORNEYS AT LAW

A PARTNERSHIP INCLUDING LAW CORPORATIONS

1001 BISHOP STREET
PACIFIC TOWER, SUITE 2200
HONOLULU, HAWAII 96813

April 15, 1986

HONOLULU OFFICE:
P. O. BOX 656
HONOLULU, HAWAII 96809
(808) 523-2500

GUAM OFFICE:
P. O. BOX BF
AGANA, GUAM 96910
(671) 472-6813
TELEX 721-6445 CWCMI GM

LOS ANGELES OFFICE:
P. O. BOX 71169
LOS ANGELES, CALIFORNIA 90071-0169
(213) 955-1200

HILO OFFICE:
P. O. BOX 686
HILO, HAWAII 96721-0686
(808) 935-6644

KONA OFFICE:
P. O. BOX 1720
KAILUA-KONA, HAWAII 96745-1720
(808) 329-6464

MAUI OFFICE:
P. O. BOX 1086
WAILUKU, HAWAII 96793
(808) 242-4535

Sports Shinko Co., Ltd.
Muraki Bldg. 2f
10-10, Yaesu, 2-Chome
Chuo-ku, Tokyo, Japan

Attn:  Mr. Takashi Yoshida

Gentlemen:

You have requested our advice on various matters relating to the capital structure of Sports Shinko (Hawaii) Co., Ltd. (hereinafter, "Shinko Hawaii"). For your convenience, we are stating the questions first and our responses thereafter.

1. Question: Can Sports Shinko Co., Ltd. (Japan) (hereinafter, "Shinko Japan") increase the capital of Shinko Hawaii to $1 million before April 30, 1986?

Resonse: Shinko Hawaii may issue additional shares to Shinko Japan for $1 million cash or any other designated amount at any time before April 30, 1986 provided that Shinko Hawaii receives the $1 million or any other designated amount before April 30, 1986. As an alternative, Shinko Japan may pay in $1 million or any other designated amount to Shinko Hawaii and treat it as additional capital without receiving additional shares of stock. Accordingly, to answer your question, it is not difficult to increase the capital of Shinko Hawaii as long as it receives the additional capital. We recommend that any increase of capital be allocated between stated capital and paid-in surplus. For

090 2323

CABLE ADDRESS CWCMI          TELECOPIER (808) 523-2633          TELEX 723-8770 CWCMI HR

**EXHIBIT 1**

Sports Shinko Co., Ltd.
Page 2
April 15, 1986

example, if $1 million was paid to Shinko Hawaii by Shinko Japan, the total cash Shinko Hawaii would have is $1,001,000 ($1 million currently paid in and the original $1,000 paid in at incorporation). We would recommend that $199,000 be allocated to stated capital and $801,000 be allocated to paid-in surplus. The reason for this allocation is to make the remittance of $801,000 to Shinko Japan easier under Hawaii corporate law. If all $1,001,000 were designated as stated capital, then remittance of $801,000 or any other amounts from capital would require satisfaction of more conditions under Hawaii corporate law.

2. <u>Question</u>: What is the withholding rate under the Internal Revenue Code (the "Code") and under the U.S. - Japan treaty (the "Treaty") on interest paid on loans to Shinko Hawaii by Shinko Japan, the 100% parent of Shinko Hawaii? When is interest deductible by Shinko Hawaii?

<u>Response</u>: The withholding rate under Section 1441 of the Code is 30%. The withholding rate under Article 13(4) of the Treaty is 10%. Assuming that Shinko Hawaii reports under the cash method of accounting, interest paid by Shinko Hawaii will generally be deductible when paid. The interest must be true "interest", as opposed to a disguised dividend (i.e., the interest rate must be reasonable) and not a capitalized expenditure (such as, prepaid interest or construction period interest).

3. <u>Question</u>: What is the withholding rate on dividends from Shinko Hawaii to Shinko Japan under the Code and the Treaty?

<u>Response</u>: Under Section 1441 of the Code, the withholding rate on dividends paid by Shinko Hawaii to Shinko Japan is 30% of the amount paid. The withholding rate under Article 12(2) of the Treaty is 10%.

4. <u>Question</u>: What is the time permitted to use net operating losses under the Code?

<u>Response</u>: Net operating losses (NOLs) may be carried forward 15 years. I.R.C. § 172(b)(1)(A).

090 2324

Sports Shinko Co., Ltd.
Page 3
April 15, 1986

    5. <u>Question</u>: Is there "safe harbor" debt to equity ratio under the Code? If not, what is a suggested debt to equity ratio for Shinko Hawaii?

    <u>Response</u>: There is no "safe harbor" debt to equity ratio under the Code. Section 385(b) of the Code specifies various factors, including the debt to equity ratio, that the regulations may consider in determining whether an interest in a corporation is to be treated as stock or indebtedness. However, the proposed debt-equity regulations under Section 385 were withdrawn in 1983 and have not yet been reissued. As a result, classification as debt or equity will be determined based on a "facts and circumstances" test. A 3:1 debt to equity ratio with respect to related party financing should generally be considered reasonable. (This ratio is also consistent with the "safe harbor" formerly provided under Section 1.385-6(f) of the proposed regs.) This assumes that the debt instrument has normal debt characteristics, such as a stated principal amount and maturity date, bears a market rate of interest, and is paid in accordance with its terms. Assuming a 3:1 ratio, the amount of debt between Shinko Hawaii and Shinko Japan should thus be limited to $12 million, and the remaining $4 million treated as equity.

    6. <u>Question</u>: Do the imputed interest rules and the rules with respect to converting a cash method taxpayer to the accrual method with respect to interest apply to the loan between Shinko Japan and Shinko Hawaii?

    <u>Response</u>: The loan from Shinko Japan to Shinko Hawaii would not be subject to the below market loan rules of Section 7872 which would otherwise govern the minimum interest rate permitted under the loan. Temp. Reg. § 7872-5T(2)(i). However, Section 482 (allocations between related taxpayers) could still apply, which could have an impact on the characterization of payments as interest or principal if the loan did not provide for a market rate of interest.

    Regardless of the rate of interest, the note will have original issue discount ("OID") if it does not provide for fixed payments of interest on at least an annual basis. The effect of the OID rules of Section 1272 of the

090 2325

Sports Shinko Co., Ltd.
Page 4
April 15, 1986

Code is to place both the borrower and the lender on the accrual basis with respect to OID under a note. In the present case, however, so long as the note evidencing the loan is held by Shinko Japan or a related foreign entity, Section 163(e)(3) of the Code provides that amounts of OID arising under the note would not be deductible by Shinko Hawaii until paid. This may create some flexibility and planning opportunities in structuring the loan's interest rate and payment structure. Of course, we would want to consider the Japan tax consequences of any such arrangement.

    We hope the foregoing is helpful to you, and if you have any questions, please feel free to call the undersigned.

                        Very truly yours,

                        Franklin K. Mukai

FKM:gc

090 2326