IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SPORTS SHINKO CO., LTD | ) | Civ. No. 04-00124 BMK |
| | ) | Civ. No. 04-00127 BMK |
| Plaintiff, | ) | |
| | ) | CONSOLIDATED CASES |
| vs. | ) | |
| | ) | |
| | ) | ORDER DENYING KG PARTIES' |
| QK HOTEL, LLC, et al., | ) | MOTION FOR PARTIAL |
| | ) | SUMMARY JUDGMENT |
| Defendants. | ) | |
| | ) | |
| And | ) | |
| | ) | |
| FRANKLIN K. MUKAI, et al., | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SPORTS SHINKO (USA) CO., | ) | |
| LTD., et al., | ) | |
| | ) | |
| Third-Party Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SPORTS SHINKO (HAWAII) CO., | ) | |
| LTD., et al., | ) | |
| | ) | |
| Third-Party | ) | |
| Defendants/Counterclaimants, | ) | |
| | ) | |
| vs. | ) | |

QK HOTEL, LLC, et al.,                     )
                                           )
              Third-Party                  )
Counterclaim Defendants.                   )
                                           )
AND CONSOLIDATED CASES       )
_____ )

## ORDER DENYING KG PARTIES' MOTION FOR
## PARTIAL SUMMARY JUDGMENT

Defendants, Counterclaimants, and Third Party Plaintiffs KG

Holdings, LLC, Kiahuna Golf Club, LLC, KG Kauai Development, LLC, Pukalani

Golf Club, LLC, KG Maui Development, LLC, Mililani Golf Club, LLC, QK

Hotel, LLC, and OR Hotel, LLC (collectively, "KG") have filed a motion for

partial summary judgment as to the Sports Shinko Parties' fraudulent transfer

claims against KG.  The motion was heard on November 16. 2007.  After careful

consideration of the motion, the supporting and opposing memoranda, and the

arguments of counsel, KG's motion for partial summary judgment is hereby

DENIED.

## FACTUAL BACKGROUND

At the heart of this case is the claim that Sports Shinko Waikiki ("SS-

Waikiki") fraudulently transferred two hotels to KG in 2002.  SS-Waikiki is a

subsidiary of Sports Shinko USA ("SS-USA"), which in turn is owned by Sports

Shinko Japan ("SS-Japan"), a Japanese corporation (collectively "Sports Shinko").

2

In 2004, SS-Japan was bought out of Japanese bankruptcy by South Wind, a

Cayman corporation owned by Goldman Sachs.  SS-Japan, now standing in the

shoes of the Japanese bankruptcy trustee, claims that at the time of the sale of the

two hotels in 2002, SS-Waikiki owed a large debt to SS-Japan.  SS-Japan claims

that these hotels were transferred to KG for less than their market value, which

hindered SS-Japan's ability to collect its debt from SS-Waikiki.

## STANDARD OF REVIEW

Motions for summary judgment are only granted when the court

determines that there is no genuine issue of material fact, and that the undisputed

facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P.

56(c).  In determining whether a genuine issue of material fact exists, courts must

resolve all ambiguities and draw all factual inferences in favor of the non-moving

party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline

v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223 (9th Cir. 2000).

The court's function in deciding a motion for summary judgment is not to try

issues of fact, but to determine whether there are any issues to be tried.  Anderson,

477 U.S. at 249.  If there is any evidence in the record from which a reasonable

inference could be drawn in favor of the non-moving party on a material issue of

fact, summary judgment is improper.  See T.W. Elec. Serv., Inc. v. Pacific Elec.

Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987) (summary judgment must be denied if a rational trier of fact might resolve the issue in favor of the non-moving party).

Where the nonmoving party is required to prove its case by clear and convincing evidence, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." Suzuki Motor Corp. v. Consumers Union of U.S., Inc., 330 F.3d 1110, 1132 (9 the Cir. 2003) (quoting Anderson, 477 U.S. at 255-56).

## DISCUSSION

KG has moved for summary judgment on the ground that regardless of whether or not an enforceable debt existed at the time of the transfer in 2002, Plaintiffs cannot maintain this action now because any pre-existing debt that SS-Waikiki owed to SS-Japan was forgiven or otherwise eliminated in 2004 when Goldman Sachs acquired ownership of the Sports Shinko companies.

KG presents significant evidence that SS-Japan forgave SS-Waikiki's outstanding debt in 2004. First, KG points to SS-Waikiki's own balance sheet, which lists no liabilities for SS-Waikiki as of December 31, 2004. (KG Ex. 6, at 2560274.) KG supports this balance sheet with SS-Waikiki's own accounting

4

information, which indicates that a large amount of debt was eliminated from SS-Waikiki's books in 2004.  SS-Waikiki General Ledger entries from August 12, 2004 and December 16, 2004 show that on February 27, 2004, SS-Waikiki recorded as a liability a substantial sum of money as "Initial Funding," and then simultaneously recorded a credit against that entry, for the same amount, which it transferred to retained earnings. (KG Ex. C-2.)

        In addition to SS-Waikiki's own financial and accounting information,  KG points to SS-USA's tax returns as providing further evidence that any debt owed to SS-Japan by SS-Waikiki was eliminated when SS-Japan was purchased by South Wind.  In particular, Form 5472 of SS-USA's 2004 tax return, filed on behalf of itself and its subsidiaries, including SS-Waikiki, shows that SS-USA and its subsidiaries started the year owing a large amount of money to SS-Japan.  (KG Ex. 3, at 2561597.)  The return shows that by the end of that year, SS-USA and its subsidiaries owed no debt to SS-Japan.  (KG Ex. 3, at 2561597.)  The inference that SS-Japan must have forgiven or otherwise eliminated the debts of SS-USA and its subsidiaries is buttressed by the Section 351 "Transferor Shareholder's Statement of Tax-Free Incorporation Transfer," filed with SS-USA's 2004 tax return, stating that SS-Japan had made a tax-free transfer to SS-USA of this exact same amount in accounts receivable.  (KG Ex. 3, at 2561599.)

Moreover, KG argues that SS-USA's tax position in 2004, 2005, and 2006 has continued to be premised on the absence of any debt owed by it or any of its subsidiaries–including SS-Waikiki–to SS-Japan as of February 24, 2004, when SS-Japan was acquired by South Wind. In particular, SS-USA has claimed, for the last three years, deductions based on net operating losses from previous years. Because the South Wind's acquisition of the Sports Shinko companies involved a greater than 5% change in ownership, SS-USA's ability to claim past net operating losses is limited to a certain percentage of the fair market value of the company on the date of the acquisition. In its 2004 tax return, and in all subsequent years, SS-USA has calculated that the fair market value of SS-USA as of the change in ownership on February 24, 2004, was a positive value, and in particular, the precise value of SS-USA's outstanding Kobayashi Notes. (See KG Exs. 10A, 11A, 11B 12A, 12B.) This positive valuation has allowed SS-USA to claim certain deductions on both its state and federal tax returns each of the past three years, all of which are predicated on SS-USA having a certain positive fair market value on February 24, 2004.

KG argues that these deductions claimed by SS-USA provide further evidence that the debt was forgiven during the change in ownership, since SS-USA could not possibly have a positive fair market value if it still carried substantial

6

debt many times greater than the value of the outstanding Kobayashi Notes.  KG argues that Sports Shinko cannot have it both ways.  Either its tax returns are correct and SS-USA's debt was forgiven by SS-Japan when it was acquired by South Wind, KG argues, or the carried forward net operating loss deductions that SS-USA took in 2004-2006 were improper because the debt was never forgiven and SS-USA could not have had a positive fair market value on February 24, 2004.

When this valuation position SS-USA has taken for tax purposes is combined with the Form 5472 it filed in 2004, as well as with the financial records and accounting information of SS-Waikiki itself, KG has presented strong and compelling evidence that any debt SS-Waikiki may have owed SS-Japan was eliminated in 2004.  In response, however, Sports Shinko is able to come forward with enough evidence to show that a genuine issue of material fact still exists regarding the existence of this debt.

First, Sports Shinko provides a SS-Waikiki balance sheet different than the one relied upon by KG, and which shows that as of December 31, 2004, SS-Waikiki had significant liabilities.  (SS Ex. 66, at GT 038263.)  Sports Shinko claims that this is the correct, revised balance sheet, and that the balance sheet KG points to is merely a purchase accounting balance sheet created for the sole purpose of the sale to South Wind.  In support of this argument, Sports Shinko

provides the declaration of Hungke Lee, an officer of South Wind who oversaw the preparation of SS-Waikiki's 2004 financial statements.  Lee states that the purchase accounting balance sheets  "were made solely for accounting purposes" and they "do[] not mean that SW legally forgave its loans to SS USA and its subsidiaries, including SSW."  (Lee Decl. ¶ 6.)

In addition, Sports Shinko points to an unsigned and undated Loan Purchase Agreement (KG Ex. 4, at 2560239), and a signed (but not dated) Supplement to Loan Purchase Agreement (KG Ex. 4 at 2560288).  Through these documents, South Wind agrees to purchase certain outstanding loans from SS-Japan, effective December 30, 2004.  Among these loans that South Wind agreed to purchase was the loan made to SS-Waikiki.  While the extent to which these loan purchase documents were actually executed is uncertain, when viewed in the light most favorable to Sports Shinko, these documents provide evidence that SS-Waikiki's loans had not been cancelled or eliminated by SS-Japan in February of 2004.

Sports Shinko also claims that SS-USA's 2004 tax returns incorrectly state that SS-Japan transferred the inter-company debt back to SS-USA.  In support of this argument, Sports Shinko provides a declaration by SS-USA's tax preparer, Doreen Griffith, who states that the Section 351 statement "was filed as a

8

precaution to explain why no taxable income was recognized by SS USA when SS USA no longer owed debt to SS Japan," but that she later learned "that the debt had been sold from SS Japan to another company," rather than transferred back to SS-USA. (First Griffith Decl. ¶ 9-10.) She claims that the 2005 SS-USA tax return corrected this error with a Form 5472 that reported a financial relationship between South Wind and SS USA. In a subsequent declaration, Griffith claims it was a further error that she reported this financial relationship on the 2005 form as a debtor-creditor one, rather than as one of creditor-debtor. (Second Griffith Decl. ¶ 2.)

Finally, Sports Shinko argues that it is not necessarily the case that its valuation of SS-USA at a positive fair market value for the purposes of net operating loss deductions is inconsistent with its arguments that SS-Waikiki's debt was not eliminated. Sports Shinko argues that KG has confused book value and market value, and that it is still possible for SS-USA to have a positive market value even with fewer assets than liabilities. Additionally, Sports Shinko argues that even if its tax position is inconsistent with its position on the validity of the debt, the valuation of the company for tax purposes may well have been an error, rather than any sort of fraud.

9

While the Court is certainly troubled by the appearance that Sports Shinko may be playing fast and loose with the facts, Sports Shinko is not estopped from making arguments in this proceeding that are contrary to any valuation position it has taken in its tax returns.  See Kassim v. City of Schenectady, 415 F.3d 246, 251 (2nd Cir. 2005) (finding that where a party had filed income tax returns that were inconsistent with the position the party sought to advance at trial, "a question of credibility arises, which is for the jury, not the judge to assess"). Litman v. United States, 78 Fed. Cl. 90, 135 (Ct. Fed. Cl. 2007) (holding that "a valuation on a tax return 'is not conclusive and . . . the trier of fact is entitled to determine, based on all the evidence, what weight, if any, should be given to the admission'").  Viewed in the light most favorable to the nonmoving party, Sports Shinko's claim of carried forward net operating losses does not provide a basis from which the Court could properly infer cancellation of the loan.

While the story Sports Shinko tells may be less compelling and less believable than KG's version of events, it is plausible.   Sports Shinko has come forward with enough evidence that a reasonable jury applying the clear and convincing evidence standard could find in its favor.

CONCLUSION

For the foregoing reasons, KG's motion for partial summary judgment

is hereby DENIED.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: December 3, 2007

Sports Shinko Co., Ltd. v. QK Hotel, LLC, et al.; Civ. No. 04-00124 BMK; Civ. No. 04-00127
BMK; ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT